DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

(*Additional Counsel Listed on Signature Page*)

Attorneys for Defendants NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MAREN ANDERSON and VALERIA GONZALEZ,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.,<br><br>Defendants. | Case No. 2:25-cv-11576-MWC-MBK<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Date: May 1, 2026<br>Time: 1:30 p.m.<br>Courtroom 6A, 6th Floor<br>Honorable Michelle Williams Court |

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that on May 1, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard, before the Honorable Michelle Williams Court in Courtroom 6A, 6th Floor, located at 350 W. First Street, Los Angeles, California 90012-4565, Defendants National Collegiate Athletic Association and Turner Sports Interactive, Inc. (together, "Defendants") will and hereby do move to dismiss the Class Action Complaint filed by Maren Anderson and Valeria Gonzalez (together, "Plaintiffs"). Defendants' motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, and all other pleadings and papers on file herein, and such argument and evidence as may be presented to the Court.[1]

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 5, 2026.

Dated: February 12, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: */s/ David R. Singh*
DAVID R. SINGH

Attorneys for Defendants NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.

[1] All references to exhibits (i.e., "Ex.") are to copies of the state court decisions attached to the Declaration of Blake J. Steinberg.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

I. BACKGROUND ........ 3

II. LEGAL STANDARD ........ 4

III. ARGUMENT ........ 4

A. Plaintiffs Lack Article III Standing ........ 4

1. Plaintiffs Fail to Plead an Economic or Monetary Harm ........ 5

2. Plaintiffs Fail to Plead They Suffered an Intangible Harm because Plaintiffs Lack a Privacy Interest in the Allegedly Disclosed Information ........ 7

3. There was no Intangible Harm Recognized at Common Law for Plaintiffs' Claims ........ 8

4. Plaintiffs Fail to Plead Facts Establishing That They Have Personally Been Injured ........ 10

B. Plaintiffs Cannot Establish Statutory Standing Under CIPA ........ 11

C. Plaintiffs Have Not Plausibly Alleged that Defendants Operated a "Pen Register" As Defined By § 638.51 ........ 12

1. Plaintiffs' Allegations that the Technologies Transmit "Content" Foreclose Their Claim ........ 12

2. The Definition of Pen Register does not Reach Alleged Downstream Misuse, Which Dooms Plaintiffs' Claims ........ 14

3. The Alleged Conduct Does Not Map Onto the Statutory Definition of a "Pen Register" ........ 16

4. The Legislature's Promulgation of the CCPA Establishes that CIPA is not Applicable to Internet Tracking ........ 18

D. If the Court Determines that Defendants Operated a Pen Register, Defendants Fall within the Electronic Communication Service Provider Exception ........ 19

IV. CONCLUSION ........................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Data Priv. Litig.*,
2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ..... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 4, 6

*Aviles v. LiveRamp, Inc.*,
2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025) ..... 15

*Boorstein v. CBS Interactive, Inc.*
222 Cal.App. 4th 456 (2013) ..... 11, 14

*Bowe v. United States*,
2026 WL 70342 (U.S. Jan. 9, 2026) ..... 13

*Burns v. Mammoth Media, Inc.*,
2023 WL 5608389 (C.D. Cal. Aug. 29, 2023) ..... 6

*Camacho v. DG Premium Brands LLC*,
No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025) ..... 16, 17

*Casillas v. BOP LLC*,
2025 WL 2161288 (Cal. Super. Ct. June 18, 2025) ..... 12, 20

*Casillas v. Calvin Klein*,
2025 WL 3529009 (Cal. Super. Ct. Nov. 25, 2025) ..... 14

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Ct. Sep. 9, 2024) ..... 20

*Casillas v. Zappos*,
No. 24STCV14880 (Cal. Super. Ct. Nov. 18, 2025) ..... 14, 16

*Chandra v. Prager Univ. Found.*,
2025 WL 3049870 (C.D. Cal. Oct. 21, 2025) ..... 10

*Cox v. Patel*,
2013 WL 11248621 (C.D. Cal. Dec. 23, 2013) ..... 4

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 5, 9

*Ewing v. City of Carmel-By-The-Sea*
234 Cal.App. 3d 1579 (1991) .......... 11

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) .......... 4

*Garcia v. Diversified Foodservice Supply, LLC*,
No. 24STCV19784 (Cal. Super. Ct. June 24, 2025) .......... 12

*Gilligan v. Experian Data Corp*.,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 10

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) .......... 15

*I.C. v. Zynga, Inc.*,
600 F.Supp.3d 1034 (N.D. Cal. 2022) .......... 9

*Khamooshi v. Politico LLC*,
786 F.Supp.3d 1174 (N.D. Cal. 2025) .......... 5, 8, 9

*Kishnani v. Royal Caribbean Cruises Ltd*.,
2025 WL 1745726 (N.D. Cal. June 24, 2025), *appeal dismissed*, 2025 WL 2943080 (9th Cir. Oct. 3, 2025) .......... 13

*Krzyzek v. OpenX Techs., Inc*.,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 10

*LaCourt v. Specific Media, Inc.*,
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .......... 6

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) .......... 9, 10, 18

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) .......... 19

*Low v. LinkedIn Corp.*,
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) .......... 6

*Martinez v. Nygaard*,
831 F.2d 822 (9th Cir. 1987) .......... 8

*In re Meta Pixel Tax Filing Cases*, 793 F.Supp.3d 1147 (N.D. Cal. 2025) .......... 14

*Mikulsky v. Noom, Inc.*, 682 F.Supp.3d 855 (S.D. Cal. 2023) .......... 7, 8, 9

*Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413 .......... 13, 14

*Mitchener v. Talkspace Network LLC*, 2025 WL 1822801 (C.D. Cal. June 11, 2025) .......... 7

*Palacios v. Fandom, Inc.*, No. 24STCV11264 (Cal. Super. Ct. Mar. 27, 2025) .......... 12, 17

*Palacios v. Omnipet Inc.*, No. 24STCV23260 (Cal. Super. Ct. June 18, 2025) .......... 12

*Patton v. Experian Data Corp.*, 2016 WL 2626801 (C.D. Cal. May 6, 2016) .......... 4

*People v. Stipo*, 195 Cal.App. 4th 664 (2011) .......... 11, 12

*Petroliam Nasional Berhad v. GoDaddy.com*, 737 F.3d 546 (9th Cir. 2013) .......... 16

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) .......... 5, 8, 9

*Price v. Converse, Inc.*, 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) .......... 9

*Price v. Headspace, Inc.*, 2025 WL 1237977 (Cal. Super. Ct. Apr. 01, 2025) .......... 13, 14

*Rodriguez v. First Am. Fin. Corp.*, No. 24STCV05383 (Cal. Super. Ct. Apr. 30, 2025) .......... 12

*Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025) .......... 19

*Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 9

*Sanchez v. Cars.com*,
2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) .......... 12, 16

*Sanchez v. MGIC Inv. Corp Sanchez v. MGIC Inv. Corp*.,
No. 24STCV21788 (Cal. Super. Ct. June 5, 2025) .......... 12

*Semien v PubMatic, Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......... 10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 5, 7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 4, 5, 7

*In re Uber Tech., Inc., Data Sec. Breach Litig*.,
2019 WL 6522843 (C.D. Cal. Aug. 19, 2019) .......... 6

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 7

*Van Buren v. United States*,
593 U.S. 374 (2021) .......... 15

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 11

*White v. Square, Inc*.
7 Cal.5th 1019 (2019) .......... 11

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 7, 8

**Statutes**

Cal. Civ. Code § 1798.100 .......... 18, 19

Cal. Penal Code § 629.51 .......... 3

Cal. Penal Code § 637.2 .......... 1, 2, 11, 15

Cal. Penal Code § 638.50 .......... *passim*

Cal. Penal Code § 638.51 ........ *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) ........ 1, 4

Fed. R. Civ. P. 12(b)(6) ........ 1, 4

**Other Authorities**

Hearing Before Assemb. Standing Comm. on Pub. Safety, at 12:28, 2025-2026 Reg. Sess. (Cal. July 1, 2025) (statement of Sen. Anna Cabalero), https://calmatters.digitaldemocracy.org/hearings/259504 ........ 19

Bill Analysis, Assemb. B. 929, Reg. Sess., at S, T–U (Cal. July 8, 2015) ("Section 638.51 Analysis"), https://tinyurl.com/39jcb5np ........ 16, 17

Defendants National Collegiate Athletic Association and Turner Sports Interactive, Inc. (together, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs Maren Anderson's and Valeria Gonzalez's (together, "Plaintiffs") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs' single claim for relief under California's Invasion of Privacy Act ("CIPA," Cal. Penal Code § 630 *et seq.*) boils down to the assertion that information they voluntarily disclosed to access and use the www.NCAA.com website (the "Website") was transmitted to certain third parties without their consent. Plaintiffs assert Defendants used a pen register to capture routing, addressing, or signaling information from Plaintiffs' electronic devices when they visited the Website, in violation of CIPA. But while Plaintiffs complain of an invasion of privacy, they simultaneously acknowledge that the information allegedly collected is lacking in "full personal details[,]" and in many cases, is necessary for the operation of the internet.

As the Supreme Court, the Ninth Circuit, and courts in this District have explained, such alleged statutory violations alone are inadequate to confer Article III standing. Plaintiffs must allege monetary or intangible harms analogous to those traditionally recognized at common law to establish a concrete injury sufficient to confer Article III standing. But Plaintiffs here have pled neither. Plaintiffs make only conclusory allegations of economic harm, with no factual support, which do not suffice. Plaintiffs also fail to plausibly allege their claims are analogous to one of the highly offensive interferences or disclosures actionable at common law. Nor could they, given the allegedly collected information is impersonal. For these reasons, Plaintiffs fail to demonstrate Article III standing.

Plaintiffs also lack statutory standing to assert their CIPA claim for similar reasons. CIPA, as evident from the statute's plain text, only authorizes a private cause of action for a statutory violation if a plaintiff is "injured" by a violation of the chapter. Cal. Penal

Code § 637.2. Plaintiffs have not alleged facts establishing an injury, because Plaintiffs have no privacy interest in the information allegedly collected to begin with.

Even if Plaintiffs could overcome these threshold standing issues, which they cannot, their CIPA claims suffer from a myriad of other pleading deficiencies. First, Plaintiffs fail to plausibly allege the use of a "pen register" as defined by CIPA because they allege that the technologies at issue collected the contents of their communications. *See, e.g.*, Compl. ¶ 48. As courts have correctly recognized, based on the plain text of § 638.50(b), technologies that capture the contents of communications are not pen registers.

Second, Plaintiffs' theory of liability rests on the allegation that a third party—not Defendants—attempted to learn the identity of a website user utilizing data stored in their own servers. *See* Compl. ¶ 48. But, as is clear from the statute's plain text, § 638.51 does not apply to the actions of third parties downstream. This is supported by the text of § 637.2, which confers Plaintiffs a private right of action for any person injured "by violation of this chapter" against the person or entity "who committed the violation." Plaintiffs' purported injury is not by a violation of CIPA (i.e., by use of a pen register), but rather it is by downstream third parties' alleged efforts to learn the identities of users. Furthermore, because the Defendants are not the parties who allegedly attempted to learn the identities of users, Plaintiffs have not sued the right parties under their own theory of liability.

Third, Plaintiffs' theory of harm does not map onto the statutory definition of a pen register device. As made clear by the California Legislature and state courts, a pen register collects outgoing information about who the subject being surveilled is contacting. But here, Plaintiffs do not allege that any information about whom they are contacting is intercepted at all. Instead, they plead that it is information about their device that is sent to third parties. Furthermore, the use of pen registers by law enforcement requires its knowledge of the identity of the person surveilled. Again, Plaintiffs neither allege the Defendants nor the third parties can "know" Plaintiffs' identities until *after* the

alleged collection of information has occurred. This sequence of events does not amount to the operation of a pen register under CIPA.

Fourth, the California Legislature promulgated new laws since the enactment of CIPA expressly addressing and permitting internet tracking, which shows that attempting to hold companies liable under CIPA, a criminal statute, contradicts legislative intent.

Fifth, even if the Court determines that the technologies at issue are pen registers as defined by CIPA, Defendants should be considered "provider[s] of electronic or wire communication service[s]," due to the statute's broad definition of "electronic communication" (*see* Cal. Penal Code § 629.51(a)(2)), and thus are expressly permitted to "operate, maintain, and test" their website using such devices. Cal. Penal Code § 638.51(b)(1).

For these reasons, the Court should dismiss Plaintiffs' Complaint in its entirety.

## I. BACKGROUND

NCAA.com "features live video, scoring, ranking, news, and statistics for all college sports across all NCAA divisions." Compl. ¶ 11. Plaintiffs allege when they visit the Website, their IP addresses, which are anonymous identifiers associated with a user's internet router, are shared with Defendant's servers via a "HTTP request" or "GET request," which are sent by a user's browser. *Id.* ¶ 37. Defendants' servers then allegedly respond with an "HTTP response" that instructs the browser on how to "load and display" content on the Website. *Id.*

However, Plaintiffs also allege this HTTP request "causes" third party trackers—specifically, the Adform, Adnxs, and the Bounce Exchange Trackers—to be installed on users' browsers. These trackers store cookies on users' browsers, which then "send…the user's IP address, device and browser information," as well as "clickstream activity, geolocation information, [and] browsing history," to third party servers associated with the trackers. *Id.* ¶¶ 2, 38. Plaintiffs assert these third parties can interface with registered data brokers to allegedly identify an individual and effectuate targeted advertising and improve users' experiences on the Website. *E.g., id.* ¶¶ 40, 93.

Plaintiffs now bring a single CIPA § 638.51 claim, which prohibits "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Compl. ¶ 14. Plaintiffs argue the collection of this information constitutes a "pen register." *Id.* ¶¶ 56, 60, 64, 80, 92.

## II. LEGAL STANDARD

Rule 12(b)(1) permits a motion to dismiss for lack of subject matter jurisdiction. For a federal court to have subject-matter jurisdiction over an action, Plaintiffs must show they have Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021); *Patton v. Experian Data Corp.*, 2016 WL 2626801, *3 (C.D. Cal. May 6, 2016). To establish Article III standing, a plaintiff must demonstrate they suffered "an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and that "would likely be redressed by judicial relief." *TransUnion,* 594 U.S. at 423 (citation omitted). Plaintiffs "bear[] the burden of proving subject matter jurisdiction, and must carry that burden by a preponderance of the evidence." *Cox v. Patel*, 2013 WL 11248621, *2 (C.D. Cal. Dec. 23, 2013).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A court must disregard conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. *Id.* at 679. On a motion to dismiss, the court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

## III. ARGUMENT

### A. Plaintiffs Lack Article III Standing

To establish Article III standing, Plaintiffs must allege a concrete injury, "even in

the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). This requires demonstrating a "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American Courts." *TransUnion*, 594 U.S. at 427. Importantly, violations of privacy statutes like CIPA do not *de facto* confer Article III standing. *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, *3 (C.D. Cal. Dec. 29, 2025) (dismissing CIPA claims for lack of Article III standing and quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998), "statutory standing 'has nothing to do with whether there is [a] case or controversy under Article III'"); *Transunion*, 594 U.S. at 427 (holding "an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation"); *Khamooshi v. Politico LLC*, 786 F.Supp.3d 1174, 1181 (N.D. Cal. 2025) ("*Transunion* precludes standing where plaintiffs fail to allege a concrete injury, even if they have asserted a violation of CIPA").

Instead, to have standing to assert a violation of a privacy right—such as the "right . . . to remain anonymous as [Plaintiffs] navigate the internet" (Compl. ¶ 47)—Plaintiffs must allege "a close historical or common-law analogue for their asserted injury" based on one of the "four discrete torts that protected specific kinds of privacy-related harms" (those being, intrusion upon seclusion, publication of private fact, misappropriation of likeness, or false light). *Popa v. Microsoft Corp.*, 153 F.4th 784, 792, 794 (9th Cir. 2025). But here, Plaintiffs fail to plausibly plead they suffered an economic or monetary harm, and fail to plead an intangible injury because (1) they do not have a privacy interest in the allegedly disclosed information and (2) their claims do not map onto any of the historically recognized privacy-related torts.[2]

**1. Plaintiffs Fail to Plead an Economic or Monetary Harm**

Plaintiffs allege in a conclusory manner they "suffer[ed] economic injury as a result of Defendants accessing and using their personal information, and Defendants sharing

[2] Plaintiffs at no point plead a physical injury.

their information with third parties." Compl. ¶ 46. But Plaintiffs do not explain the "economic injury" they suffered, which alone warrants dismissal. *Ashcroft*, 556 U.S. at 678-79 ("[T]hreadbare recitals . . . supported by mere conclusory statements . . . are not entitled to the assumption of truth"). Further, courts in the Ninth Circuit have detailed circumstances in which disclosure of information can confer standing based on economic or monetary injury. *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, *5 (C.D. Cal. Apr. 28, 2011). To establish standing, Plaintiffs must be "foreclosed from entering into a 'value-for-value exchange'" due to the alleged conduct. *Id*. That is, there must be a "legitimate market for the information" Plaintiffs could participate in, and the value of said information must have been impaired. *See Burns v. Mammoth Media, Inc.*, 2023 WL 5608389, *4 (C.D. Cal. Aug. 29, 2023) (dismissing claims on Article III grounds where plaintiff did not establish that the prior disclosure of their information impacted the value of their data).

But here, Plaintiffs do not allege that they wanted to sell their information, that there was a legitimate market they could participate in to sell their information, that they were barred from participation in said market, or that the value of their information was diminished in said market. Accordingly, Plaintiffs fail to allege a concrete economic or monetary injury for purposes of Article III standing. *In re Uber Tech., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843, *5 (C.D. Cal. Aug. 19, 2019) (dismissing claims for lack of standing and holding to plead an economic injury resulting from "a 'loss of value of [his] private information,'" a plaintiff must "establish both the existence of a market for her personal information and an impairment of her ability to participate in that market."); *Low v. LinkedIn Corp.*, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) (similar); *LaCourt*, 2011 WL 1661532, *5 (similar); *Burns*, 2023 WL 5608389, *4 (similar) (collecting cases).

**2. Plaintiffs Fail to Plead They Suffered an Intangible Harm because Plaintiffs Lack a Privacy Interest in the Allegedly Disclosed Information**

As a threshold matter, to allege an intangible harm in the context of a disclosure of information, Plaintiffs must first establish they retain a privacy interest in the information disclosed. Otherwise, they cannot plausibly suffer an injury by its dissemination. *See Mitchener v. Talkspace Network LLC*, 2025 WL 1822801, *8 (C.D. Cal. June 11, 2025) (dismissing claims on standing grounds where plaintiff did not "sufficiently allege[] the collection or disclosure of any of her personal information that would violate a protectable privacy interest"). But Plaintiffs have no privacy interest in the "routing, addressing, or signaling information" allegedly captured and disclosed. *See* Compl. ¶ 4 (citing CIPA § 638.50).

In response to claims that a pen register was used to illegally collect information regarding websites an internet user visited, the Ninth Circuit explained, "Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit[.]" *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008). The Ninth Circuit would later elaborate that plaintiffs "do[] not have a reasonable expectation of privacy" in "record information" sent in connection with internet communications. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). Such information included "the 'name,' 'address,' and 'subscriber number or identity' of 'a subscriber to or customer of such service[.]'" *Id*. at 1104. Since *Forrester* and *Zynga*, and in light of *Spokeo* and *Transunion* (which closed the doors to arguments that statutory violations suffice for Article III standing), the existence of privacy interests has become a core consideration in courts' Article III standing analysis. *Spokeo*, 578 U.S. at 341; *Transunion*, 594 U.S. at 427; *see also Mikulsky v. Noom, Inc.*, 682 F.Supp.3d 855, 864 (S.D. Cal. 2023) (dismissing claims on standing grounds and holding, "[t]o survive a motion to dismiss, a plaintiff must identify the 'specific personal information she disclosed that implicates a protectable privacy interest'") (citation omitted). Without an

established privacy interest, Plaintiffs' claims fail at the threshold, because they cannot suffer an injury in fact over the disclosure of information in which they retain no interest. *Mikulsky*, 682 F.Supp.3d at 864-65.

Here, Plaintiffs fail to articulate a privacy interest, let alone a privacy interest in record information. According to Plaintiffs, the cookies placed on their browsers by third parties "typically contain identifiers such as user IDs or session tokens rather than full personal details." Compl. ¶ 20.[3] Indeed, the screenshots shown in the Complaint itself illustrate that the values assigned by the third parties to these cookies are unintelligible strings of characters and numbers. *See, e.g.*, *id.* ¶ 84. Therefore, the information allegedly disclosed cannot form the basis for an injury-in-fact for Article III standing. *In re Zynga* 750 F.3d at 1108 (plaintiffs "do[] not have a reasonable expectation of privacy" in "record information" sent in connection with internet communications); *Khamooshi*, 786 F.Supp.3d at 1179-80 (dismissing claims on Article III grounds, holding there is no legally protected privacy interest in IP addresses and explaining a person generally "has no legitimate expectation of privacy in information he voluntarily turns over to third parties"); *Martinez v. Nygaard*, 831 F.2d 822, 826 (9th Cir. 1987) (where plaintiffs had no "possessory interest in the place searched" or a "reasonable expectation of privacy" in a property subject to a warrant, "plaintiffs ha[d] no standing").

**3. There was no Intangible Harm Recognized at Common Law for Plaintiffs' Claims**

Even if Plaintiffs can establish a privacy interest in the allegedly disclosed information, they must analogize their claim "to the 'highly offensive' interferences or disclosures that were actionable at common law[,]" to establish standing for claims predicated on an invasion of privacy. *Popa*, 153 F.4th at 791. But Plaintiffs do not even attempt to explain how their claims map on to the intangible harms actionable at common

[3] To the extent Plaintiffs claim the collection of the contents of their communications occurred, their claim fails based on the statute's plain text definition of "pen register[,]" as explained below. Compl. ¶ 48; *see infra* III.C.1. In other words, Plaintiffs cannot both plead the collection of data beyond record information to attempt to establish Article III standing, and at the same time bring a CIPA § 638.51 claim.

law and, accordingly, fail to allege a concrete injury. *Dawidzik*, 2025 WL 3786963, *4 (dismissing claim for lack of Article III standing where Plaintiff failed to allege an injury "sufficiently analogous" to any of the common law torts); *Price v. Converse*, *Inc*., 2025 WL 3295119, *3 (C.D. Cal. Sept. 30, 2025) (finding in a nearly identical alleged data collection aimed at "fingerprint[ing]" and "identify[ing]" Plaintiff, the allegations were not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law."); *Khamooshi,* 786 F.Supp.3d at 1179, *3 (plaintiff's assertions were "too vague to assert a protectable privacy interest."); *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, *8 (C.D. Cal. Feb. 27, 2025) ("[O]ne cannot logically intrude into communications to which they are a party").

Instead, Plaintiffs only provide cursory allegations of generic privacy violations and "privacy rights" without elaboration. Compl. ¶¶ 3, 5, 13. Such allegations of privacy rights, "pitched at a high level of generality" do not suffice for Article III standing. *Popa*, 153 F.4th 792; *Mikulsky*, 682 F.Supp.3d at 865 (dismissing Plaintiffs' CIPA claim due to the conclusory nature of facts pled to support allegations that "personal information" was transmitted); *I.C. v. Zynga, Inc.*, 600 F.Supp.3d 1034, 1050 (N.D. Cal. 2022) (dismissing data breach claims for lack of standing due to Plaintiffs' inability to plead with specificity "the nature of the specific information at issue to determine whether privacy interests were implicated at all"). Indeed, Plaintiffs' so-called privacy rights alleged in the complaint are even sparser than the insufficient allegations in *Popa*, where Plaintiff's had a "broad theory that [] common law protected [the alleged] privacy rights[.]" *Popa*, 153 F.4th 792. Here, Plaintiffs plead they voluntarily visited the Websites, and thus provided Defendants with their IP addresses, device metadata, and cookie IDs. Compl. ¶ 2.

The Court's decision in *Lewis v. Magnite, Inc*. does not establish otherwise. There, this Court found that Plaintiffs showed an offensive intrusion and accordingly stated a standalone claim for invasion of privacy, but did not specifically evaluate Article III standing. *Lewis v. Magnite, Inc.*, 2025 WL 3687546, *9 (C.D. Cal. Dec. 4, 2025). Moreover, the defendant in that case is a registered data broker that operated downstream

from the initial disclosure of information, and *itself* undertook the complained-of stitching together of data found across websites to identify an individual. *Id.* at *1-2. Here, not only do Plaintiffs fail to even attempt to allege an offensive intrusion as necessary to confer Article III standing, Defendants are the website operators to whom Plaintiffs voluntarily disclosed their record information, not data brokers.[4] Compl. ¶ 12. They, unlike the third parties, do not and cannot access Plaintiffs' data from other websites, and do not attempt to identify users. *Id.* ¶¶ 1-4. Thus, because it is not Defendants who committed the alleged intrusion, Plaintiffs do not have Article III standing.

### 4. Plaintiffs Fail to Plead Facts Establishing That They Have Personally Been Injured

Plaintiffs also fail to allege facts establishing that transmission of their information occurred, which independently dooms their claim. First, they present only "illustrative" screenshots, which do not actually show Plaintiffs' own browsers. *Id.* ¶¶ 62, 98. As another judge in this District recently held in a similar internet tracking case, such illustrative evidence and other "generalized allegations" do not state a claim. *Chandra v. Prager Univ. Found.*, 2025 WL 3049870, *4 (C.D. Cal. Oct. 21, 2025).

Plaintiffs fail to plead other facts necessary to establish that their information was disclosed, including what browser they used to access the Website and their browser settings. Compl. ¶¶ 99-110. Indeed, Plaintiffs acknowledge they, and other internet users, can avoid disclosure of their information to third parties by using widely available cookie blocking technologies, which have contributed to the "decline of third-party cookies." *Id.* ¶ 25. This, coupled with Plaintiffs' admission that, despite there being "millions of visitors" to Defendant's website, there may be only thousands of Plaintiffs in the proposed class, shows that different browser settings can prevent the alleged disclosures. *Id.* ¶ 114.

---

[4] Several recent cases show § 638.51 is properly leveraged against data brokers, and not against websites, due to their ability to engage in cross-site tracking. *See Semien v PubMatic, Inc.*, 2026 WL 216333, *4 (N.D. Cal. Jan. 27, 2026) (refusing to dismiss CIPA § 638.51 claim, and finding Article III standing, where defendant, a data broker, identified plaintiff "by tracking plaintiffs' interactions across many websites"); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, *2 (N.D. Cal. Jan. 6, 2026) (similar); *Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855, *3 (N.D. Cal. Jan. 27, 2026) (similar).

These are pleading failures and not questions of fact because without alleging facts establishing that a transmission occurred on *their* browsers, or alleging information about their internet browser and settings sufficient to determine whether their information was transmitted, Plaintiffs have not met their burden of pleading facts making it plausible that they were personally injured. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (Article III standing requires the plaintiff to have been personally injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

**B. Plaintiffs Cannot Establish Statutory Standing Under CIPA**

For similar reasons, Plaintiffs lack statutory standing to assert a private right of action under CIPA. It is well established "[t]he prerequisites for standing to assert statutorily based causes of action"—as Plaintiffs assert here—"are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute." *Boorstein v. CBS Interactive, Inc*. 222 Cal.App. 4th 456, 466 (2013). Put differently, "[s]tanding rules for statutes" vary by statute. *See White v. Square, Inc*. 7 Cal.5th 1019, 1024 (2019); *see also Ewing v. City of Carmel-By-The-Sea* 234 Cal.App. 3d 1579, 1594 (1991) (courts analyze "(1) long established or commonly accepted usage; (2) usage at common law; (3) judicial interpretations of the statutory language or of similar language; (4) legislative history or purpose"). Here, the California Legislature created a private right of action only where a person "has been *injured* by a violation of" the statute. CIPA § 637.2 (emphasis added).

But Plaintiffs do not and cannot establish statutory standing under CIPA because they have not suffered such an injury. *Id*. Plaintiffs plead the collection of IP addresses, device information, and cookie IDs, but, as with Article III standing, Plaintiffs do not have a reasonable expectation of privacy in an IP address and similar information, because they are not only voluntarily provided by the internet user, they are necessary to operate a website. California state courts on statutory standing under CIPA § 638.51 are in accord. *See People v. Stipo*, 195 Cal.App. 4th 664, 666 (2011) ("A subscriber has no

expectation of privacy in the subscriber information he supplies to his Internet provider.”); Ex. A, *Sanchez v. MGIC Inv. Corp Sanchez v. MGIC Inv. Corp*., No. 24STCV21788, at 4-5 (Cal. Super. Ct. June 5, 2025) (Boxer, J.) (use of tracking technologies was insufficient to confer statutory standing under CIPA because “Plaintiff lacks a privacy expectation in the IP address she voluntarily shared with Defendant[.]”) (citing *Stipo*, 195 Cal.App. 4th at 669); Ex. B, *Garcia v. Diversified Foodservice Supply, LLC*, No. 24STCV19784, at 4 (Cal. Super. Ct. June 24, 2025) (Keeny, J.) (following the line of cases that have held “there is no legally protected privacy interest in IP addresses.”); Ex. C, *Palacios v. Omnipet Inc*., No. 24STCV23260, at 3 (Cal. Super. Ct. June 18, 2025) (Brazile, J.) (“The Court finds that the collection of an IP address is a normal component of accessing a website such that there can be no liability here.”); *Casillas v. BOP LLC*, 2025 WL 2161288, *4 (Cal. Super. Ct. June 18, 2025) (Keeny, J.) (collecting numerous state and federal cases and concluding that a user suffers no injury from the collection of their IP addresses, which is part of the operation of the internet); Ex. D, *Rodriguez v. First Am. Fin. Corp*., No. 24STCV05383, at 3 (Cal. Super. Ct. Apr. 30, 2025) (Brazile, J.) (“The Court finds that the collection of an IP address is a normal component of accessing a website such that there can be no liability here.”); Ex. E, *Palacios v. Fandom, Inc*., No. 24STCV11264, at 7 (Cal. Super. Ct. Mar. 27, 2025) at 7 (Lipner, J.) (noting that “[i]ndeed, the Los Angeles Superior Court’s own website contains a notice that it may collect and record the IP addresses of visitors.”); *Sanchez v. Cars.com*, 2025 WL 487194, *4 (Cal. Super. Ct. Jan. 27, 2025) (Murillo, J.) (holding that Plaintiff had not suffered an invasion of privacy because “a computer’s browser communicating with a server . . . is a basic function of accessing the internet.”) (citation modified).

### C. Plaintiffs Have Not Plausibly Alleged that Defendants Operated a “Pen Register” As Defined By § 638.51

#### 1. Plaintiffs’ Allegations that the Technologies Transmit “Content” Foreclose Their Claim

Plaintiffs’ own allegations establish that the technologies at issue do not fall within

the definition of a "pen register" in § 638.51. In their Complaint, Plaintiffs themselves allege the transmission of "communications content" to third parties. Compl. ¶ 48. As both state and federal courts in California have made clear, the statutory definition of a "pen register" under CIPA's plain text is a device that collects information *about* a communication, "*but not the contents of a communication*." CIPA § 638.50 (emphasis added); *Mitchener v. CuriosityStream, Inc.,* 2025 WL 2272413, *5 (N.D. Cal Aug. 6, 2025); *see also Price v. Headspace, Inc*., 2025 WL 1237977, *3 (Cal. Super. Ct. Apr. 01, 2025) ("[pen registers] are designed to capture information about the communication, but not the content of the communication itself" (emphasis added)). In other words, "if [content] is collected, the statute ceases to apply." *Mitchener,* 2025 WL 2272413, *5; *see also In re Apple Data Priv. Litig.*, 2026 WL 146025, *4–5 (N.D. Cal. Jan. 20, 2026) (finding Plaintiffs' claims that contents were intercepted could not coexist with a cause of action under § 638.51).[5]

The interplay between the wiretapping and pen register sections of CIPA also supports this statutory construction. In drafting CIPA, Congress contemplated two distinct theories of liability that are divisible based on if a device collects content—a wiretap under § 631—or if it does not collect content—a pen register under § 638.51. To read § 638.51 as capturing content not only renders the language "but not the content" as "mere surplusage" in the statutory text, it would render § 631 meaningless. *Bowe v. United States*, 2026 WL 70342, *14 (U.S. Jan. 9, 2026) (refusing to adopt a construction of a statute where another provision would necessarily become superfluous).[6]

---

[5] Though Plaintiffs only bring a pen register claim, and not a trap and trace claim, the analysis pertaining to each technology is the same. Compl. ¶ 48; *Kishnani v. Royal Caribbean Cruises Ltd*., 2025 WL 1745726, *4 (N.D. Cal. June 24, 2025), *appeal dismissed*, 2025 WL 2943080 (9th Cir. Oct. 3, 2025); *In re Apple*, 2026 WL 146025, *5. (undertaking the same analysis for both a trap and trace and pen register claim). Thus, Plaintiffs cannot bring a claim under either theory of liability.

[6] On contents, one court in the Northern District found that the "relevant statutory language is ambiguous," and held the legislature's general intent to safeguard a "free and civilized society" showed that a pen register can indeed collect contents, *In re Meta Pixel Tax Filing Cases*, 793 F.Supp.3d 1147, 1153 (N.D. Cal. 2025). But the court in that case incorrectly found an ambiguity, "If the [statutory] language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd

Furthermore, on the types of information that constitute "contents," California courts hold technologies that "engage in digital fingerprinting" and collect "personal information[,]" collect contents. *Mitchener*, 2025 WL 2272413, *5. Compl. ¶ 29. Also constituting contents are "collection[s] of user behavior" by way of "user clicks on a page." *Price v. Headspace, Inc*., 2025 WL 1237977, *3 (Cal.Super. Apr. 01, 2025); *see also* Ex. F, *Casillas v. Zappos*, No. 24STCV14880, *3 (Cal. Super. Ct. Nov. 18, 2025) (finding contents of a communication were collected where Plaintiff "allege[d] that defendant collects more than just IP addresses."); *Price*, 2025 WL 1237977, *3; *Casillas v. Calvin Klein,* 2025 WL 3529009, *1 (Cal. Super. Ct. Nov. 25, 2025). This type of content is exactly what Plaintiffs plead here. Therefore, if the Court were to credit Plaintiffs' allegations that technologies on Defendant's website digitally fingerprint Plaintiffs in an effort to learn their identities, and collect information about user "clicks," that, too, would doom Plaintiffs' claim. Compl. ¶¶ 3, 29, 56, 64, 74.

In sum, Plaintiffs' § 638.51 claim fails given their allegation that the contents of their communications were collected. *Id.* ¶ 48. However, even if the Court concluded that the contents of Plaintiffs' communications were *not* collected, that would not support Plaintiffs' Article III and statutory standing positions. In other words, Plaintiffs' pleading fails in either case: Either they have pled "too much" to sustain a CIPA § 638.51 claim, or they still lack standing. *Casillas*, 2025 WL 3529009, *2.

#### 2. The Definition of Pen Register does not Reach Alleged Downstream Misuse, Which Dooms Plaintiffs' Claims

Next, Plaintiffs' claims fail because they mistakenly rely on an atextual "downstream" theory of liability. Plaintiffs' allegations involve a host of third parties working in tandem, downstream from the incipient collection of information, to de-anonymize an individual using information stored on the third parties' servers, through

---

consequences the Legislature did not intend." *Boorstein*, 222 Cal.App.4th at 469. Here, CIPA unambiguously states that a pen register transmits addressing information, "but not the contents of a communication." CIPA § 638.50(b). A device that transmits both must necessarily transmit the contents of communications, and thus is by definition not a pen register.

use of cookies that are "created and stored by someone other than the owner of the website." Compl. ¶¶ 21, 22 ("[M]ost modern cookies now only contain a unique ID, while the associated data—such as inferred interests, demographics, or browsing history—is maintained on the third-party's servers"). This serpentine theory further displays the inapplicability of CIPA's text to the alleged misconduct. California courts have explained that any "downstream use[]" of data is not "part of the definitions of pen registers or trap and trace devices. *Aviles v. LiveRamp, Inc*., 2025 WL 487196, *3 (Cal. Super. Ct. Jan. 28, 2025); *see also Van Buren v. United States*, 593 U.S. 374, 396 (2021) (finding on a textual reading of the Computer Fraud and Abuse Act ("CFAA"), downstream misuse of data is not actionable under the statute); *see also Hannant v. Culbertson*, 2025 WL 2413894, *7 (C.D. Ill. Aug. 20, 2025) (finding that, in the internet tracking context, downstream misuse of collected data is not actionable under the CFAA).

The section of CIPA providing for a private right of action further supports Defendants' argument. Section 637.2 provides that a person who has been injured "by a violation of this chapter" may bring an action "against the person who committed the violation . . . ." Plaintiffs' purported injury is not by a violation of CIPA (i.e., by use of a pen register), but rather it is by downstream third parties' alleged efforts to learn the identities of users. Furthermore, Plaintiffs fail to allege that it is *Defendants* who are attempting to learn Plaintiffs' identity (which, again, contradicts the definition of a "pen register[,]" considering such devices do not collect contents as explained above). Under their own theory, Defendants thus could not have "committed the violation" under CIPA § 637.2, because Plaintiffs' claims are based on the conduct of third parties acting "downstream" from the initial disclosure. Moreover, in contrast to CIPA § 638.51, CIPA does expressly provide for derivative liability for Defendants "who aid[], agree[] with, employ[], or conspire[]" to read the contents of a message in the context of wiretapping claims brought under § 631(a). If the legislature intended to apply such derivative liability to a § 638.51 claim, it could have done so. *Petroliam Nasional Berhad v. GoDaddy.com*, 737 F.3d 546, 551 (9th Cir. 2013) ("Congress knew how to impose [secondary] liability

when it chose to do so.”). Because § 638.51 does not provide for derivative liability, and mandates Plaintiffs’ conduct be assessed at the point of collection, Plaintiffs’ claims fail.

**3. The Alleged Conduct Does Not Map Onto the Statutory Definition of a “Pen Register”**

This Court has the “fundamental task [] to ascertain legislative intent.” *Sanchez v. Cars.com*, 2025 WL 487194, *3 (Cal. Super. Ct. Jan. 27, 2025). The legislative intent underlying CIPA is clear: “pen registers” surveil the outgoing communications of one individual, or “Person A,” to another, or “Person B.” Bill Analysis, Assemb. B. 929, Reg. Sess., at S, T–U (Cal. July 8, 2015) (“Section 638.51 Analysis”), https://tinyurl.com/39jcb5np.

Thus, a pen register collects *outgoing* communications, and requires that Defendants use such a device to try to learn who Plaintiff was contacting. Ex. G, *Camacho v. DG Premium Brands LLC*, No. 24STCV21672, at 3-4 (Cal. Super. Ct. Apr. 17, 2025) (Seigle, J.) (dismissing § 638.51 claim where defendants allegedly sought to identify “[p]laintiff’s IP address and other undefined ‘personal information,’” rather than who they were communicating with). Here, however, the data allegedly collected is namely about the user’s “device, not information about communications to or from the device, which is required for to constitute a pen register or trap and trace device.” Ex. F, *Zappos*, No. 24STCV14880, at 3.

And, even if the court were to consider Plaintiffs’ claim through the perspective of visits to NCAA.com—with NCAA.com being “person A”, as opposed to Plaintiffs—this too would not establish that Defendants operated or installed a pen register. As indicated above, pen registers identify “what third parties the subject is communicating with.” Ex. G, *Camacho*, No. 24STCV21672, at 3; *see also* Bill Analysis, Assemb. B. 929, Reg. Sess., at T–U (Cal. July 8, 2015), https://tinyurl.com/39jcb5np. But Plaintiffs do not and cannot plausibly allege that IP addresses, device identifiers, and cookie IDs enabled Defendants—as the “subject” in this example—to identify its website visitors, who would be the “third parties” in this situation. Compl. ¶ 3. Moreover, assessing Plaintiffs’

allegations in this way creates a tension with their own claim that they are the person being surveilled, and thus the "subject" of the pen register. Ex. E, *Palacios v. Fandom, Inc.*, No. 24STCV11264, at 8 ("This is all information about Plaintiff's device… [Plaintiff] is alleged to be the privacy Victim."); *see also* Ex. G, *Camacho*, No. 24STCV21672, at 3 ("The statute does not prohibit a defendant from collecting identifying information about who the defendant is communicating with[.]").

The legislature also clarified that pen registers are "extremely useful for law enforcement" because they allow officers "to track which people in an investigation are communicating with one another." Bill Analysis, Assemb. B. 929, Reg. Sess., at S, T–U (Cal. July 8, 2015), https://tinyurl.com/39jcb5np. And, as state courts recognize, when using a pen register, law enforcement officers "by definition knows who the subject [of their investigation] is," or rather, they know who "Person A" is. Ex. G, *Camacho*, No. 24STCV21672, at 3. Thus, even if this court accepts that CIPA Section 638.51 applies to internet tracking—an interpretation that across state and federal courts is constantly in flux—it is undeniable that the California Legislature intended in its conception of a "pen register" that the user of such a device knows the identity of the person being surveilled.

Plaintiffs complain that the tracking technologies are designed to "identify" an unknown user, through compiling "comprehensive user profiles." Compl ¶ 19. Plaintiffs allege the collection of a host of information, such as "IP addresses, browser and device information, unique digital identifiers, session data, clickstream activity, geolocation information [and] browsing history." *Id.* ¶ 2. By Plaintiffs' own pleadings, none of this information, at the point of collection, allows Defendants to know the identity of an individual visiting the Website, meaning Defendants cannot be using a pen register within the meaning of CIPA. *Id.* ¶ 7 (claiming Defendants know that Plaintiffs *visit from a specific state*, but not that Defendants know who Plaintiffs *are*).

This Court's decision in *Lewis*, which held that CIPA could apply to internet communications, does not establish otherwise. 2025 WL 3687546, *11. As the Court noted, the "Defendant's lone textual argument" was that "IP addresses, location data, and

device information do not constitute destination dialing or routing information for the party Plaintiffs contact . . . ." *Id*. at 13 (citation modified). The defendant in *Lewis* did not make the arguments based on the plain text and legislative history that Defendants here present, which demonstrate that the alleged conduct does not map onto the operation of a pen register device, as defined by CIPA. And, importantly, the defendant in *Lewis* was a data broker, which, to track users across the internet, "would necessarily have to capture destination information, more than plausibly including the 'dialing, routing, addressing, or signaling information from which a wire or electronic communication is transmitted.'" *Id*. Defendants here, in contrast, are website operators who do not track users across the internet.

Because the alleged interception of information is not related to a user's communications with another person and is rather related to a user's device, and because neither Defendants nor third parties know the identity of the user before the alleged collection of information, Plaintiffs' § 638.51 claim must fail by the plain terms of the statute.

**4. The Legislature's Promulgation of the CCPA Establishes that CIPA is not Applicable to Internet Tracking**

Plaintiffs' atextual application of CIPA § 638.51 is also irrelevant in view of new laws promulgated by the Legislature that do directly address internet tracking. The California Consumer Protection Act ("CCPA") gives internet users the right to "(1) know what personal information a business collects (Civ. Code § 1798.110), (2) delete the personal information collected (*id.* § 1798.106), (3) opt-out of the sale of personal information (*id.* § 1798.120), (4) limit disclosure and use of sensitive information (*id.* § 17898.121), and (5) to non-retaliation for exercising their CCPA rights" (*id.* § 1798.125)." *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, *4 (Cal. Super. Ct. Dec. 10, 2025). The CCPA, unlike CIPA, does not require express consent to collect information, impose criminal penalties, or require a court order in the internet tracking context. Instead, the "CCPA presumes that such tools will be employed so long as the proper

procedures such as notice, opt-out, and deletion are followed." *Id*. That entities which qualify as data brokers must "register," as Plaintiffs allege, and do not automatically face criminal liability, also demonstrates that the legislature did not intend to address internet tracking through a criminal statute like CIPA. Cal. Civ. Code § 1798.99.82(a); Compl. ¶ 40.

Thus, as recognized by California state courts, the California legislature has made clear that "[s]uing under CIPA for activity [that is] already governed by the CCPA goes against legislative intent[.]" Hearing Before Assemb. Standing Comm. on Pub. Safety, at 12:28, 2025-2026 Reg. Sess. (Cal. July 1, 2025) (statement of Sen. Anna Cabalero), https://calmatters.digitaldemocracy.org/hearings/259504; *Ink Am.,* 2025 WL 4034985, *4; *see also Licea v. Hickory Farms LLC*, 2024 WL 1698147, *4 (Cal. Super. Ct. Mar. 13, 2024) ("The court also finds public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator. Such a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability, which the court declines to consider."). This court should not ignore the plain text of the statute and legislative intent to contort CIPA to penalize conduct the legislature never intended to reach.

### D. If the Court Determines that Defendants Operated a Pen Register, Defendants Fall within the Electronic Communication Service Provider Exception

CIPA provides a statutory exception to safeguard "provider[s] of electronic or wire communication service[s]" from liability. CIPA § 638.51(b). Defendants, as providers of college sports-related content, "video[s]," and "news," fit squarely into that exception. Compl. ¶ 11. Indeed, content provided on the Website is made up of "writings, images, sounds, data, or intelligence of any nature," and is transmitted to users by "wire." CIPA §§ 629.51, 638.50. Courts have found that certain websites may fit under this statutory exemption for content with a far more tenuous connection to provision of "writings" and

"images" due to the "broad" definition of "electronic communication." *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, *4 & n.2 (Cal. Super. Ct. Sep. 9, 2024) (finding a website directed towards the sale of eyeglasses qualifies under the statutory exception due to "[t]he broad definition of 'electronic communications.'"); *BOP LLC*, 2025 WL 2161288, *2 (finding defendant's website directed towards the sale of clothing and accessories ("www.shopbop.com") qualified as an "electronic communication service").

Because Defendants provide electronic or wire communication services, it follows that they can "operate, maintain, and test" the Website with a pen register. CIPA § 638.51(b)(1). As Plaintiffs themselves admit, the website requires Plaintiffs' IP Addresses and device data to make the website function. Compl. ¶ 37. Thus, to the extent the Court finds Defendants' conduct amounted to the operation of a pen register device, they are exempt from CIPA liability as providers of electronic communication services.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

The undersigned counsel of record for Defendants certifies that this brief complies with the page limit set forth in Section 6(c) of this Court's Standing Order.

Dated: February 12, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: */s/ David R. Singh*
DAVID R. SINGH

DAVID R. SINGH
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DAVID L. YOHAI (admitted *pro hac vice*)
david.yohai@weil.com
BLAKE J. STEINBERG (admitted *pro hac vice*)
blake.steinberg@weil.com WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendants NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.