**KAHN SWICK & FOTI, LLC**
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
1901 Avenue of the Stars, 2nd Floor
Los Angeles, California 90067
Telephone: (504) 455-1400

Melissa H. Harris (admitted *pro hac vice*)
melissa.harris@ksfcounsel.com
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400

*Counsel for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MAREN ANDERSON and VALERIA GONZALEZ,

Plaintiffs,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.,

Defendants.

Case No. 2:25-cv-11576-MWC-MBK

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Date: March 27, 2026
Time: 1:30 p.m.
Courtroom 6A, 6th Floor
Honorable Michelle Williams Court

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT .......... 1
II. FACTUAL BACKGROUND .......... 2
A. Defendants' Surreptitious Use of Third-Party Trackers .......... 2
B. The California Invasion of Privacy Act .......... 4
III. LEGAL STANDARDS .......... 5
IV. ARGUMENT .......... 5
A. Plaintiffs Adequately Allege Article III Standing .......... 5
1. Plaintiffs Have Standing Based on the Violation of Their Legally Protected Privacy Rights .......... 5
a. Plaintiffs Have a Privacy Interest in Their IP Addresses .......... 6
b. Unauthorized Data Collection and Tracking Confer Standing . .......... 6
c. Defendants' Cases Are Distinguishable .......... 13
d. Defendants' Lack of Offensiveness Argument is Premature .. .......... 15
2. Plaintiffs Also Have Standing Based on Economic Injury .......... 15
B. Plaintiffs Have Statutory Standing Under CIPA .......... 16
C. Defendants' 12(b)(6) Arguments Fail .......... 18
1. Section 638.51 Applies to the Trackers .......... 18
2. That the Trackers Collect Data in Addition to IP Addresses Does Not Take Them Outside the Scope of §638.51 .......... 20
3. Defendants' "Downstream Use" Argument Fails .......... 22
4. The CCPA Does Not Conflict With CIPA .......... 23
5. The Provider Exception Does Not Apply .......... 24
D. In the Event of Dismissal, Plaintiffs Seek Leave to Amend .......... 25
V. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5

*Atkins v. Amplitude, Inc.*,
No. 24-cv-4913, 2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) ....................12

*Aviles v. LiveRamp, Inc.*,
No. 24STCV19869, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025)....................23

*Brooks v. Thomson Reuters Corp.*,
No. 21-cv-1418, 2023 WL 9316647 (N.D. Cal. Aug. 10, 2023) ....................16

*Camacho v. DG Premium*,
No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025) ....................20

*Camplisson v. Adidas Am. Inc.*,
No. 25-cv-603, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025)... 2, 7, 9, 16, 17, 22

*Casillas v. BOP LLC*,
No. 24STCV15581, 2025 WL 2161288 (Cal. Super. Ct. June 18, 2025)..... 18, 25

*Casillas v. Six Flags Ent. Corp.*,
No. 2:25-cv-6824, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025)....................20

*Casillas v. Transitions Optical, Inc.*,
No. 23-stcv-30742, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024) ....................25

*Casillas v. Zappos*,
No. 24STCV14880 (Cal. Super. Ct. Nov. 18, 2025)....................20

*Chandra v. Prager Univ. Found.*,
No. 2:25-cv-3984, 2025 WL 3049870 (C.D. Cal. Oct. 21, 2025)....................14

*Chandra v. Prager Univ. Found.*,
No. 2:25-cv-3984, 2026 WL 434938 (C.D. Cal. Jan. 27, 2026) ....................14

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)....................7, 12

*D'Antonio v. Smith & Wesson Inc.*,
No. 25-cv-3085, 2026 WL 446310 (N.D. Cal. Feb. 17, 2026) ..................... 20, 22

*Dawidzik v. Tesla, Inc.*,
No. EDCV 25-1982, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ...................14

*de Ayora v. Inspire Brands, Inc.*,
No. 25-cv-3645, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025)..........................11

*Deivaprakash v. Condé Nast*,
No. 25-cv-04021, 2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) .......... 11, 17, 20

*Doe v. Talkiatry Mgmt. Servs., LLC*,
No. 5:25-cv-781, 2025 WL 3190813 (C.D. Cal. Oct. 1, 2025)............................20

*Drummer v. CoStar Grp., Inc.*,
No. EDCV 25-1047,
2025 WL 3190656 (C.D. Cal. Oct. 22, 2025)…. .................... 2, 11, 16, 20, 21, 22

*Echeverria-Corzan v. Fox Corp.*,
No. 25-cv-4253, 2025 WL 3128194 (N.D. Cal. Nov. 7, 2025) ...........................20

*English v. IKON Bus. Sols., Inc.*,
94 Cal. App. 4th 130 (2001) ...........................................................................19

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ......................................................................... 2, 19, 22

*Fregosa v. Mashable*,
No. 25-cv-1094, 2025 WL 2886399 (N.D. Cal Oct. 9, 2025)...................... 20, 23

*Gabrielli v. Haleon*,
No. 25-cv-02555, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......................12

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-9533, 2025 WL 1939957 (N.D. Cal. July 14, 2025)........ 12, 15, 24, 25

*Garcia v. Diversified Foodservice Supply, LLC*,
No. 24STCV19784 (Cal. Super. Ct. June 24, 2025) ...........................................18

*Garon v. Keleops USA, Inc.*,
No. 25-cv-2124, 2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) .................... 23, 25

*Gilligan v. Experian Data Corp.*,

No. 25-cv-2873, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .................... 11, 14, 20

*Greenley v. Kochava, Inc.*,
684 F.Supp. 3d 1024 (S.D. Cal. 2023) ........................................................ 13, 19

*Hall v. Live Nat. Worldwide, Inc.*,
146 F.Supp. 3d 1187 (C.D. Cal. Nov. 12, 2015) ........................................... 18, 20

*Hamnant v. Culbertson*,
No. 4:24-cv-4164, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ........................23

*Hassid v. Alex & Ani, LLC*,
No. CV 25-0679, 2026 WL 160535 (C.D. Cal. Jan. 20, 2026) ........... 1, 10, 14, 20

*I.C. v. Zynga*,
600 F.Supp. 3d 1034 (N.D. Cal. 2022) ..........................................................13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020), *cert. denied*,
141 S.Ct. 1684 (Mar. 22, 2021)… .......................................................... 1, 7, 15

*In re Google RTB Consumer Privacy Litig.*,
606 F.Supp.3d 935 (N.D. Cal. 2022) ..............................................................6

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .................................................. 15, 21, 22

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ......................................................................21

*Katz-Lacabe v. Oracle America, Inc.*,
668 F.Supp. 3d 928 (N.D. Cal. 2023) ............................................................16

*Khamooshi v. Politico LLC*,
786 F.Supp. 3d 1174 (N.D. Cal. 2025) ..........................................................13

*Krzyek v. OpenX Techs.*,
No. 25-cv-5588, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ................ 10, 20, 24

*Lesh v. CNN, Inc.*,
767 F.Supp. 3d 33 (S.D.N.Y. 2025) ..............................................................13

*Lewis v. Magnite, Inc.*,
No. 2:25-cv-3448,

2025 WL 3687546 (C.D. Cal. Dec. 4, 2025)................ 2, 5, 12, 15, 19, 20, 24, 25

*Lopez v. RHP Enter., Inc.*,
No. 5:20-cv-58, 2020 WL 3882929 (C.D. Cal. Apr. 15, 2020) ............................5

*Maketa v. Valnet Inc.*,
No. 25-cv-5517, 2026 WL 323126 (N.D. Cal. Feb. 6, 2026) ..............................19

*Martinez v. Nygaard*,
831 F.2d 822 (9th Cir. 1987) ..................................................................13

*Matera v. Google Inc.*,
No. 5:15-cv-4062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ........... 2, 19, 22

*Mikulsky v. Noom, Inc.*,
682 F.Supp. 3d 855 (S.D. Cal. 2023) ...........................................................13

*Mirmalek v. L.A. Times Communs., LLC*,
No. 24-cv-1797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)............. 17, 18, 24

*Mitchener v. Talkspace Network LLC*,
No. 2:24-cv-07067, 2025 WL 1822801 (C.D. Cal. June 11, 2025)...................14

*Moody v. C2 Educ. Sys., Inc.*,
742 F.Supp. 3d 1072 (C.D. Cal. 2024)..........................................................25

*Nelson v. Reddit, Inc.*,
No. 25-cv-1470, 2026 WL 445627 (S.D. Cal. Feb. 17, 2026)............................20

*Harris v. iHeart Media, Inc.*,
No. 25-cv-6038, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026)................ 10, 17, 20

*Palacios v. Fandom, Inc.*,
No. 24STCV11264 (Cal. Super. Ct. Mar. 27, 2025).................................... 18, 20

*Palacios v. Omnipet Inc.*,
No. 24STCV23260 (Cal. Super. Ct. June 18, 2025) ..........................................18

*Pemberton v. Rest Brands Int'l, Inc.*,
No. 25-cv-3647, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .................. 11, 13

*People v. Stipo*,
195 Cal App. 4th 664 (2d Dist. 2011) ...........................................................18

*Popa v. Microsoft*,
153 F.4th 784 (9th Cir. Aug. 26, 2025)....................................................................7, 8

*Price v. Converse, Inc.*,
805 F.Supp. 3d 1102 (C.D. Cal. 2025)......................................................................13

*Rodriguez v. First Am. Fin. Corp.*,
No. 24STCV05383 (Cal. Super. Ct. Apr. 30, 2025) ...................................................18

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-cv-6525, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ..................................14

*Saleh v. Nike, Inc.*,
562 F.Supp. 3d 503 (C.D. Cal. 2021).........................................................................21

*Sanchez v. Cars.com*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super Ct. Jan. 27, 2025)............................18

*Sanchez v. MGIC Investment Corp.*,
No. 24STCV21788 (Cal. Super. Ct. June 5, 2025) ......................................................18

*Selby v. Sovrn Holdings, Inc.*,
No. 25-cv-3139, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) .....................................20

*Semien v. PubMatic Inc.*,
No. 25-cv-3164, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026)...................... 11, 20

*Shah v. Fandom, Inc.*,
754 F.Supp. 3d 924 (N.D. Cal. 2024)......................................................................6, 19

*Six v. IQ Data Int., Inc.*,
129 F.4th 630 (9th Cir. 2025)......................................................................................8

*Skidgel v. Cal. Unemp. Ins. Appeals Bd.*,
12 Cal. 5th 1 (2021)..................................................................................................21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ......................................................................................... 5, 6, 15

*U.S v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .....................................................................................13

*U.S. v. Hawkins*,
228 F.2d 517 (9th Cir. 1955) ......................................................................................23

*Van Buren v. U.S.*,
593 U.S. 374 (2021) ....................23

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023)....................15

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-1601, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ....................11

*Warth v. Seldin*,
422 U.S. 490 (1975) ....................14

*Wright v. Truecare Prop. Holdings, LLC*,
No. 3:25-cv-786, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025)....................20

**<u>Statutes</u>**

CAL. CIV. CODE § 1798.100 ....................2, 24

CAL. CIV. CODE §1798.140 ....................6

CAL. CIV. CODE §1798.175 ....................24

CAL. PENAL CODE § 637.2 ....................16

CAL. PENAL CODE §1546 ....................6

CAL. PENAL CODE §630 ....................4

CAL. PENAL CODE §638.51 .................... 1, 4, 24

CAL. PENAL CODE §638.50 ....................5, 20

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(1)....................5

Fed. R. Civ. P. 12(b)(6)....................5, 18

## I. PRELIMINARY STATEMENT

Plaintiffs allege that, in express violation of California's Invasion of Privacy Act ("CIPA"), CAL. PENAL CODE §638.51, Defendants covertly installed Trackers on the NCAA.com website that, without consent or a court order, collect and share *with third parties*—including at least two registered data brokers—users' internet protocol ("IP") addresses, browser and device information, digital identifiers, location information, browsing history, and other personal information. These Trackers also track users across the internet and create comprehensive digital profiles for marketing, analytic, and advertising purposes. ¶¶43-51.[1]

Defendants' challenges to Plaintiffs' standing fail. The Ninth Circuit has held that CIPA "codified a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020), *cert. denied*, 141 S.Ct. 1684 (Mar. 22, 2021). Plaintiffs allege that Defendants invaded their legally protected privacy rights, including their rights to control their personal information and its dissemination, and to protect their ability to remain anonymous as they navigate the internet, causing them a concrete injury. *See, e.g.*, *Hassid v. Alex & Ani, LLC*, No. CV 25-0679, 2026 WL 160535, at *1-3 (C.D. Cal. Jan. 20, 2026); *Camplisson v.*

---

[1] References to the Complaint are indicated as "¶__;" Defendants' motion to dismiss are indicated as "MTD at__;" Plaintiffs' exhibits are indicated as "Pl. Ex.__;" and Defendants' exhibits are indicated as "Def. Ex.__."

*Adidas Am. Inc.*, No. 25-cv-603, 2025 WL 3228949, at *5 (S.D. Cal. Nov. 18, 2025). Defendants accessing and sharing Plaintiffs' valuable data also establishes Article III standing through economic injury. ¶¶46, 103, 109. *See, e.g.*, *Drummer v. CoStar Grp., Inc.*, No. EDCV 25-1047, 2025 WL 3190656, at *3 (C.D. Cal. Oct. 22, 2025). Plaintiffs' allegations are also sufficient to establish statutory standing.

Defendants' 12(b)(6) challenges fare no better. This Court – and nearly every other federal court to address it – has found technology like the Trackers to fall within §638.51. *See Lewis v. Magnite, Inc.*, No. 2:25-cv-3448, 2025 WL 3687546, at *13 (C.D. Cal. Dec. 4, 2025) (Court, J.). Defendants' interpretation of §638.51 conflicts with CIPA's broad language and the California Supreme Court's instruction "to interpret CIPA in the manner that 'fulfills [its] legislative purpose . . . by giving greater protection to privacy interests.'" *Matera v. Google Inc.*, No. 5:15-cv-4062, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)). And the California Consumer Protection Act ("CCPA"), CAL. CIV. CODE 1798.100, *et seq.*, does not limit or preempt CIPA. To the extent that Defendants believe §638.51's scope should be narrowed, "the legislature is the appropriate forum. . . ." *Magnite*, 2025 WL 3687546, at *13.

## II. FACTUAL BACKGROUND

### A. Defendants' Surreptitious Use of Third-Party Trackers

Defendant National Collegiate Athletic Association ("NCAA") is a governing body for college athletics throughout the United States and owns www.NCAA.com

(the "Website"). ¶11. Defendant Turner Sports Interactive, Inc. ("Turner," and, together with NCAA, "Defendants") operates the Website. ¶12. Plaintiffs allege that Defendants have covertly installed three third-party trackers on the Website—the Adform, Adnxs, and Bounce Exchange Trackers ("Trackers")—for analytical, marketing, and targeted advertising purposes. ¶¶2, 52-53, 73-74, 85-86. When a user visits the Website, their browser sends an "HTTP" request to Defendants' servers, which respond with an "HTTP response" instructing the browser how to load the Website and causing Trackers to be installed on the browser. ¶¶43-44. The Trackers then cause the browser to send them the user's IP address,[2] device and browser information, and other personal information, including unique digital identifiers; location information (*e.g.*, city, zip code, and longitude or latitude); hashed email address; online or offline activities or interests; purchase history; content viewed; web pages accessed, interactions with ads, and whether advertised products were purchased. ¶¶44, 48. The Trackers also store third-party cookies[3] on the user's browser, which may remain for up to a year and allow the third parties to persistently track users across multiple browsing sessions, devices, and websites. ¶¶48, 65. The

---

[2] An IP address is a unique numerical identifier containing geographic information that can be used to determine the state, city, and zip code where a device is located. ¶¶16-17. IP addresses allow third parties to obtain personally identifying, non-anonymized information and track users across the internet. ¶¶18-19.

[3] Cookies are computer files automatically generated when a user visits a website, composed of numbers and letters unique to each browser that function as a digital "fingerprint." ¶20. Cookies remain on a browser for varying amounts of time unless and until the user clears them. *Id.* "Third-party cookies" track users across the internet, creating a comprehensive picture of their activities and behavior. ¶21.

Trackers further share users' data with third parties (including at least two registered data brokers), who aggregate the data and build comprehensive user profiles which are sold and used for targeting advertising, thus earning Defendants additional revenue at the expense of users' privacy. ¶¶ 45, 50, 58, 63.

When Plaintiffs visited the Website, Defendants caused one or more Trackers to be installed on their browsers without their knowledge, consent, or a court order. ¶¶99-100, 102-06, 108-10. Because the information collected by the Trackers is financially valuable, Plaintiffs suffered economic injury as a result of Defendants' access, use, and disclosure of it to third parties. ¶46. Plaintiffs are also injured by losing the right to control their personal information and their ability to remain anonymous as they navigate the internet. ¶47.

### B. The California Invasion of Privacy Act

California's Legislature enacted CIPA to protect privacy rights, recognizing that "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." CAL. PENAL CODE §630; ¶13. To that end, CIPA prohibits, *inter alia*, "install[ing] or us[ing] a pen register . . . without . . . a court order." CAL. PENAL CODE §638.51; ¶14. Because the Trackers are "devices or processes" that capture "routing, addressing, or signaling information" (IP addresses) from the electronic communications transmitted by Plaintiffs' computers and/or mobile devices without

a court order, they are pen registers. CAL. PENAL CODE §638.50; ¶123.

## III. LEGAL STANDARDS

On a Rule 12(b)(1) motion facially attacking standing, the Court must accept Plaintiffs' factual allegations as true. *See Lopez v. RHP Enter., Inc.*, No. 5:20-cv-58, 2020 WL 3882929, at *1 (C.D. Cal. Apr. 15, 2020) (citation omitted). "To survive a [12(b)(6)] motion to dismiss, a complaint must 'contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Magnite*, 2025 WL 3687546, at *4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he "[C]ourt 'must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff.'" *Id.* (citation omitted).

## IV. ARGUMENT

### A. <u>Plaintiffs Adequately Allege Article III Standing</u>

#### 1. Plaintiffs Have Standing Based on the Violation of Their Legally Protected Privacy Rights

Defendants argue incorrectly that Plaintiffs cannot establish injury-in-fact (the only element of standing Defendants challenge)[4] because, Defendants argue, (i) Plaintiffs "have no privacy interest" in the information allegedly captured and disclosed by the Trackers, (ii) Plaintiffs purportedly make only "cursory allegations of generic privacy violations," and (iii) Plaintiffs fail to plead facts establishing that their information was disclosed. MTD at 7-10. Each argument fails.

[4] Standing requires "injury in fact that is concrete, particularized, and actual or imminent"; "likely caused by the defendant"; and likely to be "redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted).

*a. Plaintiffs Have a Privacy Interest in Their IP Addresses*

Contrary to Defendants' position, consumers do have a privacy interest in their IP addresses. *See, e.g.*, *Shah v. Fandom, Inc.*, 754 F.Supp. 3d 924, 932 (N.D. Cal. 2024) (finding a privacy interest in "IP addresses [which] reveal geographical location and other personal information"); *In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d 935, 946-947 (N.D. Cal. 2022) (finding IP address is "personal information under California law"). Indeed, California laws explicitly protect IP addresses. *See* CAL. PENAL CODE §§1546 (d), (h), 1546.1(a)(1), (b)) (warrant required to compel internet service providers to disclose users' IP addresses); CAL. CIV. CODE §1798.140 (v)(1)(A) (2020) (protected "personal information" defined as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household, including [IP] addresses." At any rate, Plaintiffs' allegations set forth below go far beyond the mere collection and disclosure of their IP addresses; those allegations are more than sufficient to establish standing.

*b. Unauthorized Data Collection and Tracking Confer Standing*

"Various intangible harms can [ ] be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as basis for lawsuit in American courts" such as the "disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. Indeed, "violations of the right to privacy have long been actionable at common law," and a "right to privacy 'encompass[es]

the individual's control of information concerning his or her person." *Facebook,* 956 F.3d at 598 (citations omitted). The "California legislature intended to protect these historical privacy rights when [it] passed CIPA." *Id.* at 598–99.

In *Facebook*, plaintiffs alleged that Facebook tracked users' browsing histories on third-party websites and compiled them into comprehensive personal profiles which it sold to advertisers. *Id.* The Ninth Circuit held plaintiffs had standing because they "adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information." *Id.* at 598-99. In reaching this conclusion, the court held that CIPA "codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.* at 598 (citation omitted). As such, to establish Article III standing, "[t]here is no requirement that there be additional injury beyond the violation of that right or that the information collected must necessarily be sensitive and misused." *Camplisson*, 2025 WL 3228949, at *4 (citing *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106, 2025 WL 1111246, at *5 (C.D. Cal. Apr. 3, 2025)). The Ninth Circuit's decision in *Popa v. Microsoft*, 153 F.4th 784 (9th Cir. Aug. 26, 2025), does not change this analysis. *Popa* involved "session replay technology" that, unlike here, did not involve tracking beyond the defendant's website or information being used by anyone but the defendant. *Id.* at 791. Indeed, the court analogized it to "a store clerk's observing shoppers" and noted that, "[a]t

most, plaintiff alleges that [the technology] gathered her pet-store preferences and her street name." *Id.* at 791-92. Thus, the court found no standing because plaintiff failed to identify a harm "remotely similar" to the common law privacy torts. *Id.*

In contrast, Plaintiffs here allege a modern, digital analogue of the common law torts of intrusion upon seclusion and public disclosure of private facts[5] – although an "exact duplicate" of a common law tort is not required; "[a] close analogue exists when the alleged and traditionally recognized harm are similar in 'kind' rather than 'degree.'" *Six v. IQ Data Int., Inc.*, 129 F.4th 630, 634 (9th Cir. 2025) (citations omitted). Plaintiffs allege that when they visited the Website, Defendants installed Tracker(s) on their browsers without their knowledge, consent, or a court order, and the Trackers collect from all Website visitors (including Plaintiffs), and share with third parties, their personal information. ¶¶43, 50, 100, 102-04, 106, 108-10; *supra* §II.A. The Trackers are alleged to collect IP addresses, ***along with*** browser and device information, unique digital identifiers, geolocation information, detailed records of users' locations, browsing history, click history, interactions with ads, and consumer preferences – that enable third parties to persistently track users across devices, websites, and browsing sessions and create

[5] Intrusion upon seclusion requires a showing of "an intentional interference with [plaintiff's] interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." *Popa*, 153 F.4th at 791 (citations omitted). "Similarly a claim for public disclosure of private facts requires that a defendant 'gives publicity' to a matter that concerns 'the private life of another,' that the information is highly offensive to a reasonable person,' and that the information is not of legitimate concern." *Id.* (citation omitted).

detailed records for targeted advertising purposes. ¶¶56, 61, 64-68, 80-83; *supra* §II.A. As a result, Plaintiffs allege Defendants invaded their legally protected privacy rights, including the rights to control their personal information and their ability to remain anonymous as they navigate the internet, causing them a concrete injury. ¶47.

Numerous courts, including in this District, have found §638.51 standing based on substantially similar allegations as Plaintiffs', including after *Popa*. For example, in *Camplisson*, plaintiffs asserted §638.51 claims based on trackers that collected IP addresses, browser and device information, and unique identifiers, and digitally fingerprinted and tracked users across the internet. 2025 WL 3228949, at *1. The court rejected the argument—like Defendants' here—based on *Popa*, that "the harm must be 'embarrassing, invasive, or otherwise private,'" concluding:

> Rather than just recording clicks and movements on the Defendant's website, Plaintiffs have alleged that the Trackers . . . have collected a broad set of their personal identifying and addressing information without their consent and in violation of CIPA. This claim maintains a violation of privacy, particularly in the control of their own information. Thus, the injury-in-fact is in accordance with traditional privacy harms and is concrete. Plaintiffs do not lack Article III standing.

*Id.* at *6. Similarly, in *Harris v. iHeart Media, Inc.*, the court found standing where,

like here, plaintiffs alleged trackers (including one Tracker involved herein, Adnxs)[6] collected users' IP addresses and identifying information, tracked users across the internet, and built comprehensive user profiles: "The Court finds that Plaintiff has alleged the violation of a privacy interest that bears a 'close relationship' to traditional harms – *i.e.*, the loss of the ability to control information about himself and to avoid the broad dissemination of that information." No. 25-cv-6038, 2026 WL 247875, at *1-2 (N.D. Cal. Jan. 29, 2026) (citations omitted).

And in *Alex & Ani*, defendant used tracking software that, like here, were alleged to collect users' device and browser information, location, and URL tracking, and digitally fingerprint users. 2026 WL 160535, at *1-3. The court found plaintiff had standing because CIPA violations are substantive and "give[] rise to a concrete injury sufficient to confer standing," and "plaintiff has asserted an injury with a close historical and common-law analog." *Id.* at *3. The court also rejected the criticisms – like Defendants' here (*see* MTD at 7-11) – that plaintiffs' allegations were "general," "hypothetical," and "relied[d] on general screenshots," and that they did not allege any "sensitive, intimate, or private" information was collected. *Id.* at *2; *see also Krzyek v. OpenX Techs*., No. 25-cv-5588, 2026 WL 206855, at *3-4 (N.D. Cal. Jan. 27, 2026) (allegations that tracker collected IP addresses, browser and device information, location, unique identifiers, and website activity, and

---

[6] The *iHeart Media* complaint alleges that one of the trackers was the Adnxs Tracker. *See* Pl. Ex. A at 1,13.

tracked across the internet, "more invasive" than in *Popa* and sufficient to establish standing); *Semien v. PubMatic Inc.*, No. 25-cv-3164, 2026 WL 216333, at *1-2, 4-5 (N.D. Cal. Jan. 27, 2026) (similar); *Gilligan v. Experian Data Corp.*, No. 25-cv-2873, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (similar); *de Ayora v. Inspire Brands, Inc.*, No. 25-cv-3645, 2025 WL 3707561, at *2-3 (N.D. Cal. Dec. 22, 2025) (similar); *Pemberton v. Rest Brands Int'l, Inc.*, No. 25-cv-3647, 2025 WL 3268404, at *10 (N.D. Cal. Nov. 24, 2025) ("Plaintiff . . . alleges [d]efendants deprived him of control of his personal information regarding his online activity, which is a concrete injury to his right to privacy sufficient for Article III standing."); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-1601, 2025 WL 2939229, at *5 (N.D. Cal. Oct. 16, 2025) ("An individual's 'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and /or geolocation data' . . . can be quite sensitive; loss in the privacy of such data supports Article III standing.") (citation omitted); *CoStar*, 2025 WL 3199656, at *3-4 (allegations that trackers collected and shared IP addresses, browser data, and additional personal information sufficient for standing); *Deivaprakash v. Condé Nast*, No. 25-cv-04021, 2025 WL 2779193, at *2 (N.D. Cal. Sept. 30, 2025) ("*Facebook* controls here. Just as the plaintiffs there brought claims based on the creation of profiles using their internet browsing history, [plaintiff] alleges that

internet trackers allowed third parties to generate profiles reflecting his personal information. That privacy injury finds historical analogues in injuries redressable under the common law [ ] and . . . satisfies the requirements of *Popa*."); *Atkins v. Amplitude, Inc.*, No. 24-cv-4913, 2025 WL 2521732, at *3-4 (N.D. Cal. Sept. 2, 2025) (allegations that location, device IDs, and products viewed were collected by trackers sufficient for standing); *Gabrielli v. Haleon*, No. 25-cv-02555, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (allegations that trackers "deprived [plaintiff] control of personal information regarding his digital activity and profile" sufficient for standing); *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-9533, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (similar); *Rad Power Bikes*, 2025 WL 1111246, at *6 (alleged collection of "device and browser information, geographic information, referral tracking, and url tracking" and "collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data" "more than sufficient to demonstrate standing"); *cf. Magnite*, 2025 WL 3687546, at *8-9 (distinguishing *Popa* and holding, through use of tracker, "[d]efendant has effectively deanonymized [p]laintiffs and created 'digital fingerprints' for the, all without their consent. Those allegations are enough to plausibly plead a reasonable expectation of privacy[]" and "highly offensive conduct").[7]

[7] That the defendant in *Magnite* was a data broker and not a website operator (MTD at 9-10) is a red herring. The Court's holding was based on the collection of

*c. Defendants' Cases Are Distinguishable*

The cases cited by Defendants (MTD at 7-10) are distinguishable. *U.S v. Forrester*, 512 F.3d 500 (9th Cir. 2008), a criminal case, and *Martinez v. Nygaard*, 831 F.2d 822 (9th Cir. 1987), an immigration enforcement case, both involved the Fourth Amendment and therefore "have no bearing on whether an individual has standing to sue under CIPA, as CIPA provides protection beyond the floor set by the Fourth Amendment." *Lesh v. CNN, Inc.*, 767 F.Supp. 3d 33, 39 (S.D.N.Y. 2025); *see also Greenley v. Kochava, Inc.*, 684 F.Supp. 3d 1024, 1051 (S.D. Cal. 2023) (rejecting application of criminal cases to CIPA analysis). In *I.C. v. Zynga*, 600 F.Supp. 3d 1034, 1049 & n.7 (N.D. Cal. 2022), plaintiffs alleged only "basic contact information" was disclosed and the claims arose out of a one-time data breach — patently different from the ongoing and pervasive collection and tracking alleged here. Neither *Mikulsky v. Noom, Inc.*, 682 F.Supp. 3d 855 (S.D. Cal. 2023), nor *Khamooshi v. Politico LLC*, 786 F.Supp. 3d 1174 (N.D. Cal. 2025), had allegations of tracking or creation of digital profiles, and in *Mikulsky*, plaintiff "only alleged disclosure of 'personal information' without specifying what that information included." *Pemberton*, 2025 WL 3268404, at *4 (distinguishing *Mikulsky* and *Khamooshi*). The nine-page complaint in *Price v. Converse, Inc.*, 805 F.Supp. 3d 1102 (C.D. Cal. 2025) (Pl. Ex. B) was bare-bones, unlike the detailed Complaint

---

plaintiffs' personal information, tracking of plaintiffs, and creation of profiles, not the defendant's status. 2025 WL 3687546, at *8-10. And as discussed above, courts routinely find standing in tracking cases where defendants are website operators.

here. The court did not conduct a standing analysis in *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-6525, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025). And unlike in *Dawidzik v. Tesla, Inc.*, No. EDCV 25-1982, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025), Plaintiffs allege the data collection occurs across the internet and not just on Defendants' Website.

Defendants also ignore the subsequent history of *Chandra v. Prager Univ. Found.*, No. 2:25-cv-3984, 2025 WL 3049870 (C.D. Cal. Oct. 21, 2025), in which the court upheld the second amended complaint, where, like here, plaintiffs alleged defendants caused their own data to be sent to third-parties, thus curing the defect in their prior complaint. *See Chandra v. Prager Univ. Found.*, No. 2:25-cv-3984, 2026 WL 434938, at *4 (C.D. Cal. Jan. 27, 2026). And contrary to Defendants' argument under *Warth v. Seldin*, 422 U.S. 490, 502 (1975), Plaintiffs sufficiently allege injury specific to them by alleging they visited the Website and the Trackers track <u>all</u> visitors to the Website. *See Alex & Ani*, 2026 WL 160535, at *3 (standing where "defendant's tracking practices enable it to regularly collect personalized information when someone, like plaintiff, visits defendant's website"). Unlike in *Mitchener v. Talkspace Network LLC*, No. 2:24-cv-07067, 2025 WL 1822801, at *8 (C.D. Cal. June 11, 2025), Plaintiffs here specifically allege the types of information the Trackers collect and that it is used to build comprehensive user profiles. *See Experian Data*, 2026 WL 32259, at *2 (finding data collection to build profiles

conferred standing).

*d. Defendants' Lack of Offensiveness Argument is Premature*

To the extent the Court disagrees with Plaintiffs, "[t]he ultimate question of whether [defendant's]'s tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *Facebook*, 956 F.3d at 606; *see also Magnite*, 2025 WL 3687546, at *9 ("[T]he question of the degree to which Defendant[s]' conduct was highly offensive to a reasonable person should not be resolved at the pleading stage."); *Motorola*, 2025 WL 1939957, at *10 ("[I]t is premature to dismiss Gabrielli's claims based on a determination of how offensive or serious the privacy intrusion is.").

**2. Plaintiffs Also Have Standing Based on Economic Injury**

"If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion*, 594 U.S. at 425. "[A]ny monetary loss, even one as small as a fraction of a cent, is sufficient to support standing." *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023). Standing cannot be denied just because the economic injury is "amorphous and difficult to quantify." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1025 (N.D. Cal. 2024).

"The personal information obtained and distributed by Defendants has significant economic value as consumers' personal information is viewed as a form of currency in the e-commerce industry." ¶46. As a result, Plaintiffs suffer economic injury from Defendants accessing, using, and sharing their information with third

parties. *Id.* Courts have found similar allegations sufficient for standing. *See, e.g.*, *CoStar*, 2025 WL 3190656 at *3 (standing where "[p]laintiffs also allege that this collection and transmission economically harms [them], because such data underpinning targeted advertising is economically valuable"); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-1418, 2023 WL 9316647, at *6 (N.D. Cal. Aug. 10, 2023) (standing where personal data "sold and transmitted to third parties" and plaintiffs were "deprived of the value of their data"). Defendants argue Plaintiffs lack standing because they "do not allege that they wanted to sell their information, that there was a legitimate market they could participate in to sell their information, that they were barred from participation in said market, or that the value of their information was diminished in said market." MTD at 6. But this is not required. *See CoStar*, 2025 WL 3190656 at *3; *Brooks*, 2023 WL 9316657, at *6; *see also Katz-Lacabe v. Oracle America, Inc.*, 668 F.Supp. 3d 928, 939-40 (N.D. Cal. 2023) (standing in privacy case despite no allegations digital profiles "were actually sold or made available for sale by [defendant] to anyone").

**B. <u>Plaintiffs Have Statutory Standing Under CIPA</u>**

CIPA confers statutory standing on persons "injured by a violation" of the statute and provides that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." CAL. PENAL CODE §§ 637.2(a), (c). Thus, "a violation of one's privacy rights is an injury in itself, and the statute does not require more." *Camplisson*, 2025 WL

3228949, at *4. Plaintiffs allege a violation of their privacy rights – their rights to control their personal information and to remain anonymous as they navigate the internet. *See supra* §II.A. Thus, "for the same reasons Plaintiff[s] ha[ve] alleged an Article III injury, [they] ha[ve] also alleged a statutory CIPA injury." *iHeart Media*, 2026 WL 247875, at *2 n.4 (citations omitted). Indeed, courts routinely hold that allegations like Plaintiffs' are sufficient to establish §638.51 standing.

For example, in *Condé Nast*, like here, plaintiff alleged trackers collected and shared users' IP addresses and metadata, placed cookies on their browsers that identified and tracked them, and created comprehensive digital profiles of them. Stating that "it does not matter whether [plaintiff] had a 'reasonable expectation of privacy' in the information collected," the court found statutory standing "because the privacy violation extends beyond the collection of just his IP address and metadata; it encompasses how that collection allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous." 798 F.Supp. 3d at 1106-07; *see also Camplisson*, 2025 WL 3228949, at *4 ("Plaintiffs have specifically alleged that their personally identifiable information was recorded without their consent, which violates [their] right to privacy. Thus, Plaintiffs have sufficiently alleged statutory standing.") (citation omitted); *Mirmalek v. L.A. Times Communs., LLC*, No. 24-cv-1797, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024) (statutory standing where trackers

collect and disclose IP addresses "to unconsented-to third parties . . . to serve targeted advertisements . . . .") (citation omitted).[8]

C. **Defendants' 12(b)(6) Arguments Fail**

Plaintiffs adequately allege the Trackers are "pen registers," installed or used by Defendants, without a court order.[9] *See Mirmalek*, 2024 WL 5102709, at *3. Defendants' 12(b)(6) arguments should be rejected.

**1. Section 638.51 Applies to the Trackers**

Defendants ignore the statute's plain language, arguing—based on selective legislative history and unpublished state trial court cases—that §638.51 does not apply to the Trackers because they did not collect outgoing communications nor do Plaintiffs allege the collected information "enabled Defendants . . . to identify its

---

[8] Defendants' cases (MTD at 11-12) do not support a different result. *People v. Stipo*, 195 Cal App. 4th 664 (2d Dist. 2011), which held, under the Fourth Amendment, that a criminal defendant has no expectation of privacy in his IP address, has no applicability in the CIPA context (*see supra* §IV.A.1.c) and Plaintiffs allege more than collection of IP addresses. *See supra* §II.A. And the rest are unpublished trial court decisions with "no precedential value." *Hall v. Live Nat. Worldwide, Inc.*, 146 F.Supp. 3d 1187, 1197 n.30 (C.D. Cal. Nov. 12, 2015) (citation omitted). Further, four of them involved allegations of only IP address collection, and they relied on inapposite criminal cases. *See Garcia v. Diversified Foodservice Supply, LLC*, No. 24STCV19784 (Cal. Super. Ct. June 24, 2025) (Def. Ex. B); *Palacios v. Omnipet Inc.*, No. 24STCV23260 (Cal. Super. Ct. June 18, 2025) (Def. Ex. C); *Sanchez v. Cars.com*, No. 24STCV13201, 2025 WL 487194 (Cal. Super Ct. Jan. 27, 2025); *Casillas v. BOP LLC*, No. 24STCV15581, 2025 WL 2161288 (Cal. Super. Ct. June 18, 2025); *Rodriguez v. First Am. Fin. Corp.*, No. 24STCV05383 (Cal. Super. Ct. Apr. 30, 2025) (Def. Ex. D). *Palacios v. Fandom, Inc.*, No. 24STCV11264 (Cal. Super. Ct. Mar. 27, 2025) (Def. Ex. E) did not address statutory standing. And *Sanchez v. MGIC Investment Corp.*, No. 24STCV21788, at 4-5 (Cal. Super. Ct. June 5, 2025) (Def. Ex. A) discounted federal court decisions while finding the statute does not cover new technologies, such as IP address collection, which is at odds with numerous decisions in this District. *See infra* § IV.C.1.

[9] Defendants do not dispute they installed or used the Trackers without a court order.

[*sic*] website visitors." MTD at 16. These arguments are unavailing.

"The axioms of statutory construction require [the court] first to look at the words used by the Legislature. If the language is unambiguous, [the court's] task is finished." *Magnite*, 2025 WL 3687546, at *13 (citing *English v. IKON Bus. Sols., Inc.*, 94 Cal. App. 4th 130, 143 (2001)). Under the plain language of the statute, website trackers are a "device or process," and IP addresses constitute "routing, addressing, or signaling information." *See, e.g.*, *Fandom*, 754 F. Supp. 3d at 928-29 ("[T]he IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information," and a "process" includes software "that identifies consumers, gathers data, and correlates that data") (citing *Greenley*, 684 F.Supp. 3d at 1050). Further, even if the Court were to consider it, legislative intent supports *Plaintiffs'*, not Defendants', interpretation of the statute. "[T]he California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Matera*, 2016 WL 8200619, at * 19 (quoting *Flanagan*, 27 Cal.4th at 775).

For these reasons, this Court, and nearly every other federal court to address the issue, have rejected Defendants' arguments and have held that §638.51 applies to trackers that collect IP addresses and other information like that alleged here – including some of the **same** Trackers involved in this case. *See, e.g.*, *Maketa v. Valnet Inc.*, No. 25-cv-5517, 2026 WL 323126, at *1 (N.D. Cal. Feb. 6, 2026)

(Adnxs); *Fregosa v. Mashable*, No. 25-cv-1094, 2025 WL 2886399, at *1, 4-5 (N.D. Cal Oct. 9, 2025) (Bounce Exchange); *Magnite*, 2025 WL 3687546, at *13 ("[T]he Rubicon Tracker records Plaintiffs' movements across the internet as they move across the internet. To do so, [it] would necessarily have to capture destination information, more than plausibly including the 'dialing, routing, addressing, or signaling information from which a wire or electronic communication is transmitted….") (citing CAL. PENAL CODE §638.50(b)).[10] It is telling that, again, the only cases cited by Defendants are unpublished state trial court cases with "no precedential value." *Hall*, 146 F.Supp. 3d at 1197 n.30 (citation omitted).[11] Further, Defendants' strained attempt to distinguish *Magnite* fails. *See supra* note 7.

**2. That the Trackers Collect Data in Addition to IP Addresses Does Not Take Them Outside the Scope of §638.51**

Defendants argue that Plaintiffs allege the "contents" of their communications were disclosed, placing them outside the ambit of §638.51. MTD at 12-14. But

[10] *See also*, *e.g.*, *D'Antonio v. Smith & Wesson Inc.*, No. 25-cv-3085, 2026 WL 446310, at *4-5 (N.D. Cal. Feb. 17, 2026); *Nelson v. Reddit, Inc.*, No. 25-cv-1470, 2026 WL 445627, at *6 (S.D. Cal. Feb. 17, 2026); *iHeart Media,* 2026 WL 247875, at *2-3; *Krzyzek*, 2026 WL 206855, at *9 (OpenX); *Condé Nast*, 798 F.Supp. 3d at 1104-06; *Semien*, 2026 WL 216333, at *10-11; *Alex & Ani*, 2026 WL 160535, at *6; *Experian*, 2026 WL 32259, at *4; *Casillas v. Six Flags Ent. Corp.*, No. 2:25-cv-6824, 2025 WL 3684543, at *8-9 (C.D. Cal. Dec. 15, 2025); *Wright v. Truecare Prop. Holdings, LLC*, No. 3:25-cv-786, 2025 WL 3248749, at *4-5 (S.D. Cal. Nov. 21, 2025); *Echeverria-Corzan v. Fox Corp.*, No. 25-cv-4253, 2025 WL 3128194, at *1 (N.D. Cal. Nov. 7, 2025); *CoStar,* 2025 WL 3190656, at *4; *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-3139, 2025 WL 2950164, at *4 (N.D. Cal. Oct. 17, 2025); *Doe v. Talkiatry Mgmt. Servs., LLC*, No. 5:25-cv-781, 2025 WL 3190813, at *6-7 (C.D. Cal. Oct. 1, 2025).

[11] *See Fandom*, *supra* Note 8; *Camacho v. DG Premium*, No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025) (Def. Ex. G); *Casillas v. Zappos*, No. 24STCV14880 (Cal. Super. Ct. Nov. 18, 2025) (Def. Ex. F); (Def. Ex. E).

Plaintiffs do not allege the collection of "contents," defined as "the intended message conveyed by the communication, [which] does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Saleh v. Nike, Inc.*, 562 F.Supp. 3d 503, 517 (C.D. Cal. 2021) (citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014)).[12] At any rate, the plain language of the statute does not place the Trackers outside the ambit of §638.51, and legislative history contradicts Defendants' interpretation of the statute.

It is unclear from CIPA's language "whether a device that collects wiretap content and pen register metadata is subject to *both* CIPA's wiretap provisions and its pen register provisions."[13] *Meta Pixel*, 793 F.Supp 3d at 1153 (emphasis in original); *see also CoStar*, 2025 WL 3190656, at *5 ("[I]t is not apparent from the face of CIPA that it excludes pen registers that may also collect some additional information."). Thus, the Court must "determine the Legislature's intent so as to effectuate the law's purpose." *Meta Pixel*, 793 F.Supp. 3d at 1153 (citing *Skidgel v.*

[12] *See also* ¶125 ("IP addresses . . . do not reveal the contents of the communications between users and the Websites."); *Zynga*, 750 F.3d at 1108 ("IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'") (citation omitted).

[13] "The relevant statutory language is ambiguous. On the one hand, that language could be interpreted, as [defendant] contends, to define a pen register as a device that records *only* 'dialing, routing, addressing, or signaling information' and that does not record 'the contents of a communication.' On the other hand, it could be interpreted to define a pen register as any device that records 'dialing, routing, addressing, or signaling information' while clarifying that a device that records *only* 'the contents of a communication' is not a pen register, and is instead subject solely to CIPA's wiretap provisions." 793 F.Supp. 3d at 1153 (emphasis in original).

*Cal. Unemp. Ins. Appeals Bd.*, 12 Cal. 5th 1, 14 (2021)). That legislative intent is clear: "[T]here is no doubt that the California Legislature, in enacting CIPA, intended 'to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society." *Id.* (citing *Flanagan*, 27 Cal. 4th at 775). Accordingly, courts should "interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Id.* (citing *Matera*, 2016 WL 8300619, at *19). *Meta Pixel* found it was "highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications," and held that §638.51 excludes technology that "records *only* 'the contents of communications.'" *Id.* at *16, 19 (emphasis added); *see also Smith & Wesson*, 2026 WL 446310, at *5 (following *Meta Pixel*); *Camplisson*, 2025 WL 3228949, at *7 (rejecting argument that because "the information collected . . . is substantive," it falls outside §638.51); *CoStar*, 2025 WL 3190656, at *5 (following *Meta Pixel*).[14]

### 3. Defendants' "Downstream Use" Argument Fails

Defendants argue they cannot be liable under §638.51 "because Plaintiffs' claims are based on the conduct of third parties acting 'downstream' from the initial disclosure," and the statute "does not provide for derivative liability." MTD at 14-

[14] Indeed, courts overwhelmingly find trackers that collect the same or substantially similar information as the Trackers here to be pen registers. *See supra* § IV.C.1.

16; *see also* MTD at 10 ("Defendants are the website operators . . . not data brokers . . . Thus, because it is not Defendants who committed the alleged intrusion, Plaintiffs do not have Article III standing."). But liability under §638.51 attaches to those who "install or use" a pen register, which Defendants allegedly did. ¶¶52, 71, 73. A similar argument was rejected in *Fregosa*: "The Complaint, however, pleads direct, not secondary, liability: it alleges that [defendant] embedded third-party trackers in is own website, thereby causing users' browsers to install and run them, and that [defendant] used the resulting data flows." 2025 WL 2886399, at *8.[15]

**4. The CCPA Does Not Conflict With CIPA**

In a final attempt to evade the statute, Defendants argue that the promulgation in 2018 of the CCPA, which "directly address[es] internet tracking . . . demonstrates that the legislature did not intend to address internet tracking through a criminal statute like CIPA." MTD at 19. But the CCPA does not purport to limit CIPA, either expressly or impliedly. The California Legislature "is presumed to know its own laws, and a later general statute does not overrule an earlier specific one unless it does so clearly." *U.S. v. Hawkins*, 228 F.2d 517, 518 (9th Cir. 1955).

Further, there is no conflict between the CCPA and CIPA, as Defendants

[15] Defendants' cases are unavailing. Neither *Van Buren v. U.S.*, 593 U.S. 374 (2021) nor *Hamnant v. Culbertson*, No. 4:24-cv-4164, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) analyzes CIPA. And *Aviles v. LiveRamp, Inc.*, No. 24STCV19869, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025), was decided before numerous decisions by California federal courts holding "that trackers that collect IP addresses fall within CIPA's scope." *Garon v. Keleops USA, Inc.*, No. 25-cv-2124, 2025 WL 2522374, at *5 n.5 (N.D. Cal. Sept. 2, 2025) (criticizing *Aviles* for analyzing legislative history in lieu of statutory language).

claim, because – like CIPA – the CCPA does not enable companies to collect and disclose individuals' data without prior notice and consent. *See* CAL. CIV. CODE § 1798.100(a) ("A business that controls the collection of a consumer's personal information shall, at or before the point of collection, inform consumers of" the types of data collected). Thus, the "CCPA and CIPA are complementary." *Mirmalek*, 2024 WL 5102709, at *5; *see also Krzyzek*, 2026 WL 206855, at *9 (rejecting argument that "reading CIPA's definition of pen registers to encompass web pixels would create conflict between [CIPA] and the . . . CCPA"). And even if there were a conflict, CIPA would govern: "[I]n the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." CAL. CIV. CODE §1798.175.

Finally, the argument that applying §638.51 to the Trackers "would potentially disrupt a large swath of internet commerce" is overblown. *See* MTD at 19. As this Court observed in rejecting a similar argument, the "parade of horribles that [defendant] declares will follow from this Court's interpretation . . . has not come to fruition in the last few years . . . ." *Magnite*, 2025 WL 3687546, at *13. At any rate, "the legislature is the appropriate forum" to address this. *Id.*

**5. The Provider Exception Does Not Apply**

"A provider of electronic or wire communication service may use a pen register . . . [t]o operate, maintain, and test . . . [that] service." CAL. PENAL CODE §638.51(b)(1). Defendants have the burden to establish this exception applies. *See*

*Motorola*, 2025 WL 1939957, at *12 (citations omitted). Defendants fail to do so, merely claiming that "[b]ecause [they] provide electronic or wire communication services it follows that they can 'operate, maintain, and test' the Website with a pen register." MTD at 20; *see Motorola*, 2025 WL 1939957, at *12 ("Motorola has not established that … it collects the tracked information through the cookies to operate, maintain, and test a wire or electronic communication service."). Further, even if IP addresses were necessary to "operate, maintain, and test" the Website, Plaintiffs allege more than collection of IP addresses, and "Defendants do[ ] not argue that the collection of this data is necessary to operate or maintain the Website. Thus Defendants[‘] argument fails." *Moody v. C2 Educ. Sys., Inc.,* 742 F.Supp. 3d 1072, 1077 (C.D. Cal. 2024).[16] Finally, whether the exception applies "is a question of fact not suitable for" a motion to dismiss. *Keleops*, 2025 WL 2522374, at *6.

### D. <u>In the Event of Dismissal, Plaintiffs Seek Leave to Amend</u>

Leave to amend "shall be freely given when justice so requires" (FED. R. CIV. P. 15(a)), and should be granted "unless it is clear that the complaint could not be saved by any amendment." *Magnite*, 2025 WL 3687546, at *15 (citation omitted). Thus, if the Court grants the motion to dismiss, Plaintiffs request leave to amend.

## V. CONCLUSION

For the above reasons, Defendants' motion to dismiss should be denied in full.

---

[16] Thus, Defendants' cases, which involve only collection of IP addresses, are inapposite. *See Casillas v. Transitions Optical, Inc.*, No. 23-stcv-30742, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024); *BOP*, 2025 WL 2161288.

Dated: March 6, 2026

**KAHN SWICK & FOTI, LLC**

/s/ *Kim E. Miller*

Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
1901 Avenue of the Stars, 2nd Floor
Los Angeles, California 90067
Telephone: (504) 455-1400

Melissa H. Harris (admitted *pro hac vice*)
melissa.harris@ksfcounsel.com
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400
2500

*Counsel for Plaintiffs and the Putative Class*

**LOCAL RULE 11-6.1 CERTIFICATION**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,785 words, which complies with the word limit of L.R. 11-6.1, and is 25 pages, which complies with the Honorable Michelle Williams Court's Standing Order Regarding Newly Assigned Cases.

*/s/ Kim E. Miller*
Kim E. Miller