DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendants NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.

(*Additional Counsel Listed on Signature Page*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MAREN ANDERSON and VALERIA GONZALEZ,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.,<br><br>Defendants. | Case No. 2:25-cv-11576-MWC-MBK<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Date: March 27, 2026<br>Time: 1:30 p.m.<br>Courtroom 6A, 6th Floor<br>Honorable Michelle Williams Court |

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

I. PLAINTIFFS LACK ARTICLE III STANDING .......... 2

A. Plaintiffs Fail to Satisfy the Analysis Required by *TransUnion* and *Popa* .......... 2

1. Plaintiffs Do Not Have a Protected Privacy Interest .......... 2

2. Plaintiffs Do Not Plead Intrusion or Publication of a Private Fact .......... 4

3. Plaintiffs Fail to Plead a Highly Offensive Intrusion or Disclosure .......... 4

4. Plaintiffs' Efforts to Avoid *Popa* Fail .......... 5

B. Plaintiffs Do Not Plead They Were Personally Injured .......... 5

C. Plaintiffs Do Not Plausibly Allege any Monetary Harm .......... 6

II. PLAINTIFFS STILL CANNOT STATE A CLAIM UNDER CIPA § 638.51 .......... 7

A. Plaintiffs Do Not Have Statutory Standing .......... 7

B. The Alleged Conduct Does Not Amount to Operation of a Pen Register .......... 8

1. Pen Registers Do Not Collect "Contents" of Communications .......... 8

2. CIPA § 638.51 Does Not Apply to "Downstream" Misuse .......... 9

3. The Alleged Conduct Does Not Map Onto the Statutory Definition .......... 10

4. Plaintiffs' Reading Contradicts Legislative Intent of the CCPA .......... 11

C. The Electronic Communications Service Provider Exception Applies .......... 12

III. PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED .......... 12

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atkins v. Amplitude, Inc.*, 2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) .......... 5

*Aviles v. Liveramp, Inc.*, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025) .......... 9

*Brooks v. Thomson Reuters Corp.*, 2023 WL 9316647 (N.D. Cal. Aug. 10, 2023) .......... 6

*Camacho v. DG Premium Brands LLC*, No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025) .......... 11

*Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) .......... 2, 8

*Casillas v. BOP LLC*, 2025 WL 2161288 (Cal. Super. Ct. June 18, 2025) .......... 12

*Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370 (Cal. Super. Ct. Sep. 9, 2024) .......... 9, 12

*Chandra v. Prager University Foundation*, 2025 WL 3049870 (C.D. Cal. Oct. 21, 2025) .......... 6

*D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310 (N.D. Cal. Feb. 17, 2026) .......... 6

*Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) .......... 6

*Dawidzik v. Tesla, Inc.*, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 5

*Drummer v. Costar Grp., Inc.*, 2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) .......... 6, 8

*In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) .......... 5

*Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 5

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 3

*Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187 (C.D. Cal. 2015) .......... 7

*Hannant v. Culbertson*, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) .......... 10

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026)........................................................5

*Hassid v. Alex & Ani, LLC*,
2026 WL 160535 (C.D. Cal. Jan. 20, 2026)........................................................5

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)........................................................2

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)........................................................6

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)........................................................5

*King v. Navy Fed. Credit Union*,
699 F. Supp. 3d 864 (C.D. Cal. 2023)........................................................2

*Krzyek v. OpenX Techs.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026)........................................................4, 11

*LaCourt v. Specific Media, Inc.*,
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)........................................................6

*Lesh v. CNN, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025)........................................................3

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026)........................................................3

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025)........................................................*passim*

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025)........................................................8

*Mirmalek v. Los Angeles Times Communications LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)........................................................8, 11

*Nelson v. Reddit, Inc.*,
2026 WL 445627 (S.D. Cal. Feb. 17, 2026)........................................................11

*People v. Stipo*,
195 Cal. App. 4th 664 (2011)........................................................7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)........................................................*passim*

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025)........................................................5

*Price v. Headspace, Inc.*,
2025 WL 1237977 (Cal. Super. Ct. Apr. 1, 2025)........................................................8

*Reisberg v. Renaissance Learning, Inc.*, 2026 LX 34431 (C.D. Cal. Feb. 17, 2026) .......... 4

*Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025) .......... 11

*Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 4

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 8, 9

*Sanchez v. MGIC Inv. Corp.*, No. 24STCV21788 (Cal. Super. Ct. June 5, 2025) .......... 7

*Schmier v. U.S. Court of Appeals*, 279 F.3d 817 (9th Cir. 2002) .......... 12

*Shah v. Fandom*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 3, 8

*Steinle v. City & County of San Francisco*, 230 F. Supp. 3d 994 (N.D. Cal. 2017), *aff'd*, 919 F.3d 1154 (9th Cir. 2019) .......... 7

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 1, 2, 5

*In re Uber Tech., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843 (C.D. Cal. Aug. 19, 2019) .......... 6

*United States v. Auernheimer*, 748 F.3d 525 (3d Cir. 2014) .......... 12

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) .......... 2, 3

*United States v. Hawkins*, 228 F.2d 517 (9th Cir. 1955) .......... 11

*Van Buren v. United States*, 593 U.S. 374 (2021) .......... 10

*In re Zynga Privacy Litigation*, 750 F.3d 1098 (9th Cir. 2014) .......... 3, 9

**Statutes**

California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.* .......... 1, 11

California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*. .......... *passim*

**Other Authorities**

Bill Analysis, Assemb. B. 929, Reg. Sess., at S, T–U (Cal. July 8, 2015) (“Section 638.51 Analysis”), https://tinyurl.com/39jcb5np ....................................... 10

## PRELIMINARY STATEMENT

Plaintiffs' Opposition fails to remedy the fundamental—and fatal—pleading deficiencies identified in Defendants' motion. As to Article III standing, Plaintiffs rely on outdated authority and attempt to obscure the analysis. Plaintiffs suggest that their claims are analogous to common law torts, as required by the Supreme Court in *TransUnion* and the Ninth Circuit in *Popa*. But they cannot map their claims onto these torts because they have not identified a protected privacy interest or established the alleged conduct would be highly offensive to a reasonable person. Although this Court previously allowed a California Invasion of Privacy Act ("CIPA") claim to proceed in *Magnite*, that claim involved a defendant data broker tracking individuals across the internet, not a website operator—a very different set of facts and allegation of injury. Plaintiffs concede that they have not alleged that their own information, as opposed to that of some unidentified internet user, was disclosed, and thus fail to plead a personal injury. In addition, Plaintiffs do not meaningfully respond to Defendants' argument that they have not alleged economic injury, as the Complaint does not plead that Plaintiffs were foreclosed from any market for their information.

Plaintiffs also still fail to plausibly allege claims under CIPA. They incorrectly assume they have statutory standing based on their flawed Article III analysis, improperly discount Defendants' cases, and unsuccessfully attempt to evade their own allegations that contents of communications were disclosed, which precludes their pen register claims as a matter of law. Plaintiffs further ignore aspects of the plain text that demonstrate the alleged conduct, which occurs downstream from the point of collection, does not fit within the definition of a pen register. In addition, Plaintiffs fail to reckon with the tension between their proposed interpretation and the California Consumer Privacy Act ("CCPA"), as well as the breadth of CIPA's electronic communications service provider exception, which bars liability too.

# I. PLAINTIFFS LACK ARTICLE III STANDING

## A. Plaintiffs Fail to Satisfy the Analysis Required by *TransUnion* and *Popa*

Plaintiffs' Opposition relies heavily on pre-*TransUnion* and pre-*Popa* authority. But under controlling law, Plaintiffs cannot demonstrate a concrete injury-in-fact as required for Article III standing absent a "close relationship" to a traditionally recognized harm. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Where, as here, plaintiffs allege only intangible injury, they must analogize their claims to recognized torts at common law, as Defendants argued. Mot. at 8:19-9:10. Indeed, Plaintiffs' own cases recognize this is required. *E.g.*, *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, *6 (S.D. Cal. Nov. 18, 2025). For the first time in their Opposition, Plaintiffs now claim the alleged conduct is analogous to the "common law torts of intrusion upon seclusion and public disclosure of private facts[.]" Opp. at 8:4-6.[1] But Plaintiffs do not mention these torts in their Complaint, and cannot amend via their Opposition. *King v. Navy Fed. Credit Union*, 699 F. Supp. 3d 864, 870 (C.D. Cal. 2023).

Plaintiffs also did not plead facts establishing they suffered harm analogous to those actionable at common law. As Defendants explained, Plaintiffs pled only cursory, generic allegations that their privacy rights were invaded. Mot. at 9:11-12; Compl. ¶¶ 3, 5, 13. As Plaintiffs recognize, the common law privacy torts require intrusions or disclosures into "private affairs" "that would be highly offensive to a reasonable man[,]" but they fail to identify an action by Defendants that invaded their private affairs and would be highly offensive to a reasonable person. Opp. at 8 n.5.

### 1. Plaintiffs Do Not Have a Protected Privacy Interest

Despite the Ninth Circuit and many courts holding otherwise, Plaintiffs claim to have a protected interest in their IP addresses. They do not. Mot. at 7:12-8:18 (citing, *e.g.*, *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("[T]here is no legally protected privacy interest in IP addresses"). Plaintiffs dismiss Defendants' authority as limited to

[1] Plaintiffs do not attempt to analogize to any other common law privacy torts.

the Fourth Amendment and data breach context, but ignore federal courts consider such cases in evaluating if there is concrete injury for Article III standing. *E.g.*, *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, *5-7 (S.D. Cal. Feb. 23, 2026).[2] In particular, Plaintiffs ignore the crux of Defendants' argument that there is no protected privacy interest in IP addresses and other information "voluntarily turned over . . . to direct the third party's servers[,]" as the Ninth Circuit has recognized. *Forrester*, 512 F.3d at 510.[3]

Moreover, Plaintiffs' suggestion that they retained a legally protected interest in IP addresses voluntarily turned over to NCAA.com is belied by their hedge that the Complaint referenced other information too. Opp. at 6:16-19, 8:17-18. At the point of collection, this other information allegedly reflects the type of device and browser used (e.g., Mac, Google Chrome), website session activity, "unique digital identifiers" (which are set by the third parties and do not name a specific person), and certain location information (Compl. ¶¶ 2, 38),[4] distinct from the information as to "modes of living, purchase decisions, [and] spending habits" in which this Court found the plaintiff had a reasonable expectation of privacy in *Magnite*. *Lewis v. Magnite, Inc.*, 2025 WL 3687546, *8 (C.D. Cal. Dec. 4, 2025). Here, as Defendants argued, Plaintiffs lack a "reasonable expectation of privacy" in "record information." Mot. at 7:16-19. The Ninth Circuit in *In re Zynga Privacy Litigation* found there was no reasonable expectation of privacy in "record information about [] communications"—there, webpages visited and identifiers assigned by Facebook. 750 F.3d 1098, 1102, 1108 (9th Cir. 2014). Compl. ¶ 20; Mot. at 8:4-9. Given Plaintiffs here too have pled collection of generic device and browser level information, they therefore fail to plausibly allege a protected privacy interest.[5]

---

[2] Plaintiffs' *Lesh v. CNN, Inc.*, 767 F. Supp. 3d 33 (S.D.N.Y. 2025) and *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) cases did not analyze whether to apply Fourth Amendment cases to Article III standing. Opp. at 13:8-10.

[3] Plaintiffs cite other statutes (Opp. at 6:1-19), which are irrelevant to the Article III analysis because the legislature "may not simply enact an injury into existence" because "under Article III, an injury in law is not an injury in fact." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789-90 (9th Cir. 2025).

[4] The alleged geolocation data does not identify a specific person. *E.g.*, Compl. ¶ 64.

[5] *Shah v. Fandom,* 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) is of limited persuasive value because the defendant failed to raise the argument that the plaintiff did not have a

**2. Plaintiffs Do Not Plead Intrusion or Publication of a Private Fact**

While Plaintiffs try to avoid *Saedi v. SPD Swiss Precision Diagnostics GmbH*, that case makes clear that where "a plaintiff voluntarily provides information to a defendant," as here, "there can be no *intrusion*" as required for such a claim. 2025 WL 1141168, *6-7 (C.D. Cal. Feb. 27, 2025). Plaintiffs also fail to allege their information was made public, as required for publication of private facts. *Popa*, 153 F.4th at 791; *Reisberg v. Renaissance Learning, Inc.*, 2026 LX 34431, *10-15 (C.D. Cal. Feb. 17, 2026) (dismissing publication of private facts claim where defendant disclosed information to a "limited number of third parties" and did not cause "embarrassment"). Plaintiffs have thus failed to analogize their claims to any common law tort, and lack Article III standing.

**3. Plaintiffs Fail to Plead a Highly Offensive Intrusion or Disclosure**

Plaintiffs incorrectly suggest that inquiry into whether the conduct was highly offensive is "premature" (Opp. at 15:2-13), even though both common law torts they point to have a "highly offensive" prong. *Popa*, 153 F.4th at 791. *Popa* indeed concluded a plaintiff's failure to allege a "'highly offensive' interference[] or disclosure" at the pleading stage required dismissal. *Id.* While this Court wrestled with the appropriateness of determining the "degree" to which conduct was highly offensive at the pleading phase in *Magnite* on an intrusion upon seclusion claim (not Article III standing), it still analyzed whether the complaint sufficiently pled highly offensive conduct. 2025 WL 3687546, *9.

Plaintiffs here have failed to meet the baseline reached by the plaintiff in *Magnite*: Defendants operate a website—they are not alleged to be data brokers, to track Plaintiffs across the internet, or to themselves create digital profiles that encompass information such as "health, private interests, [and] buying habits[,]" facts which were dispositive in *Magnite*. *Id.*[6] Moreover, at the point of collection on Defendants' website, the information allegedly at issue amounts to unintelligible strings of numbers and text

---

protected privacy interest in IP address information in its briefing.

[6] Plaintiffs' other cases involving data brokers are inapposite for this reason as well. *E.g.*, *Krzyek v. OpenX Techs.*, 2026 WL 206855, *1, *3-4 (N.D. Cal. Jan. 27, 2026)

(Compl. ¶ 62), which the Ninth Circuit and other courts in this District have held does not map onto information protected at common law. *Popa*, 153 F.4th at 786 ("30 different categories" of information related to website activity collected by Microsoft did not qualify); *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, *1, *4-5 (C.D. Cal. Dec. 29, 2025) (disclosure of IP addresses, "referrer" URLs, browser and device type, and website activity was not "highly offensive to a reasonable man"); *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1105 (C.D. Cal. 2025) (third-party collection of "device and browser information, geographic information, and referral tracking" not "'highly offensive'").[7]

**4. Plaintiffs' Efforts to Avoid *Popa* Fail**

While Plaintiffs suggest *Popa* did not involve "information being used by anyone but the defendant[,]" Opp. at 7:25, the case involved use of a Microsoft (*i.e.*, third-party) software on the petsupplies.com website. *Popa*, 153 F.4th at 786.[8] And while Plaintiffs rely extensively on the pre-*TransUnion* decision, *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), to suggest a violation of CIPA alone "gives rise to a concrete injury[,]" Opp. at 7:13-14, *Popa* held an such an alleged statutory violation alone is insufficient for Article III standing. *Popa*, 153 F.4th at 794 ("[E]ven though our analysis in *Eichenberger* and *In re Facebook* might have arguably offered at the time some support for the position that Popa now advances, that analysis finds no support in *TransUnion*."). Plaintiffs thus cannot avoid the common law tort analysis set out above.[9]

**B. Plaintiffs Do Not Plead They Were Personally Injured**

While Plaintiffs argue they pled the alleged disclosures occurred for everyone who visited the website, they do not contest, and thus concede, that the screenshots in the

---

[7] Other California federal courts are in accord. *E.g.*, *Khamooshi v. Politico LLC*, 2025 WL 2822879, *3 (N.D. Cal. Oct. 2, 2025).

[8] Plaintiffs' *Harris v. iHeartMedia, Inc.* case likewise incorrectly suggests there was no third-party disclosure in *Popa*. 2026 WL 247875, *2 (N.D. Cal. Jan. 29, 2026).

[9] Plaintiffs' remaining cases are inapposite. Several involved cookie banners that misrepresented information was not being shared. *E.g.*, *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, *6 (N.D. Cal. Aug. 29, 2025). Other cases involved distinct information, including names, birthdays, addresses, sexual orientation, and medical conditions. *E.g.*, *Hassid v. Alex & Ani, LLC*, 2026 WL 160535, *1-3 (C.D. Cal. Jan. 20, 2026); *Atkins v. Amplitude, Inc.*, 2025 WL 2521732, *1-2 (N.D. Cal. Sept. 2, 2025).

Complaint do not reflect information from their own browsers. Mot. at 10:12-13. While the court in *Chandra v. Prager University Foundation* allowed an amended complaint to survive a motion to dismiss, the Complaint here is indistinguishable from the *Chandra* plaintiffs' original complaint, which was dismissed because plaintiffs there similarly conceded their screenshots were illustrative. 2025 WL 3049870, *4 (C.D. Cal. Oct. 21, 2025); Compl. ¶¶ 62, 98 (explicitly presenting "illustrative" screenshots).

Moreover, another California federal court recently dismissed similar allegations that a defendant tracked unspecified "Website users" in a CIPA action. *D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310, *4-5 (N.D. Cal. Feb. 17, 2026); *see also Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, *1 (9th Cir. Dec. 17, 2024) (no standing because plaintiff did not "herself [make] any communications that could have been intercepted [on] the website"); *Magnite*, 2025 WL 3687546, *12 (dismissing wiretapping claim involving illustrative example of purported search terms). This is a standalone defect, as Article III standing requires each plaintiff to be personally affected. Mot. at 11.

### C. Plaintiffs Do Not Plausibly Allege any Monetary Harm

Plaintiffs have also failed to plead an actionable tangible injury. To the extent they claim monetary harm, they fail to adequately respond to Defendants' point that they have not plausibly alleged foreclosure from participating in a market for their information. Mot. at 6:14-17. They fail to address Defendants' cases where courts in this District dismissed claims for lack of Article III standing where, as here, plaintiffs failed to plead foreclosure from participating in a market for their information. *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, *5 (C.D. Cal. Apr. 28, 2011); *In re Uber Tech., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843, *5 (C.D. Cal. Aug. 19, 2019); Opp. at 15:14-20.[10] Plaintiffs thus fail to adequately plead an economic injury as well.

---

[10] Plaintiffs incorrectly claim this is not a required showing, citing three inapposite cases. *CoStar* did not find plaintiffs need not allege a market for their information. *Drummer v. Costar Grp., Inc.*, 2025 WL 3190656, *3 (C.D. Cal. Oct. 22, 2025). The *Brooks* defendant allegedly sold plaintiffs' information for a profit, unlike here. *Brooks v. Thomson Reuters Corp.*, 2023 WL 9316647, *2 (N.D. Cal. Aug. 10, 2023). And *Katz-Lacabe* found standing based on alleged privacy injuries, not economic harm. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 939-40 (N.D. Cal. 2023).

## II. PLAINTIFFS STILL CANNOT STATE A CLAIM UNDER CIPA § 638.51

### A. Plaintiffs Do Not Have Statutory Standing

Plaintiffs agree CIPA § 637.2 only confers statutory standing on persons who have been "injured by a violation" of the statute, but incorrectly assume they have statutory standing based on their Article III analysis. Opp. at 16:22-17:5. Because Plaintiffs lack a protected privacy interest in the information at issue, they have not plausibly alleged they were "injured" under the statute. Mot. at 11:22-12:23. Plaintiffs' attempts to avoid Defendants' cases on this point are unavailing. They cite no in-jurisdiction authority holding cases from the Fourth Amendment context cannot be considered in evaluating CIPA claims, and improperly discount *People v. Stipo*, 195 Cal. App. 4th 664, 668-69 (2011), which found individuals do not have a privacy interest in information shared voluntarily as part of the internet's normal operation. Opp. at 18 n.8. Moreover, courts routinely consider Fourth Amendment cases in evaluating CIPA claims. *E.g.*, Ex. A at 6,[11] *Sanchez v. MGIC Inv. Corp.*, No. 24STCV21788 (Cal. Super. Ct. June 5, 2025).

Furthermore, Plaintiffs' own authority recognizes that state court cases "supported by reasoned analysis may be treated as persuasive authority." *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1197 n.30 (C.D. Cal. 2015). Defendants' state court cases concluded plaintiffs lacked a privacy interest in the information at issue based on careful review of case law, plain text, and legislative history. *E.g.*, Ex. A, *MGIC*, at 6-11. Plaintiffs also assert four of Defendants' cases evaluated only IP addresses, but do not acknowledge Defendants' other state cases involved other information too, including browser and device information. *E.g., id.* at 3-4; Opp. at 18 n.8. While not binding, these decisions by California state courts interpreting a California state court are persuasive,[12]

---

[11] Exhibit citations refer to the cases attached to the Steinberg Declaration, ECF No. 21.

[12] Given the CIPA claim presents a question of state law, the Court should look to the state court decisions dismissing similar claims. *Steinle v. City & County of San Francisco*, 230 F. Supp. 3d 994, 1014 n.8 (N.D. Cal. 2017) ("Federal district courts confronted with questions of state law must follow . . . the state's highest court or . . . predict [what] that court would decide . . . Holdings of lower state courts are often persuasive authority in conducting the latter inquiry."), *aff'd*, 919 F.3d 1154 (9th Cir. 2019).

and they demonstrate that Plaintiffs do not have statutory standing.[13]

**B. The Alleged Conduct Does Not Amount to Operation of a Pen Register**

**1. Pen Registers Do Not Collect "Contents" of Communications**

In Opposition, Plaintiffs claim they do not plead contents of their communications were collected. Opp. at 21:1-5. But the Complaint pled collection of "communications content[,]" including "browsing history and online behavior" as well as "browser type, operating system, screen resolution, and installed fonts" for digital "fingerprinting" purposes. Compl. ¶¶ 48, 64 28, 29. Courts have held this information constitutes contents, and Plaintiffs cannot disavow their own allegations. *Price v. Headspace, Inc.*, 2025 WL 1237977, *3 (Cal. Super. Ct. Apr. 1, 2025) ("user behavior" including "user clicks on a page" are contents); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, *5 (N.D. Cal. Aug. 6, 2025) (any "fingerprint" that reveals biographical information is contents), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025). In *Magnite*, the Court concluded the plaintiffs had not adequately pled disclosure of contents in the context of wiretapping claims, and therefore did not reach the issue of whether a pen register device can collect the contents of communications. 2025 WL 3687546, *12-14. Plaintiffs' allegations here, however, that contents were collected require dismissal, since pen registers do not collect the "contents of a communication." CIPA § 638.50(b).

Plaintiffs improperly rely on *Meta Pixel*, suggesting a pen register may collect contents of communications. Opp. at 21:11-20. But as Defendants explained, *Meta Pixel* incorrectly found the statute was ambiguous to conclude a pen register could collect contents. Mot. at 13-14 n.6. The statute explicitly states a pen register transmits addressing information, "but not the contents of a communication." CIPA § 638.50(b).[14]

---

[13] Plaintiffs' cases do not establish otherwise. *Mirmalek v. Los Angeles Times Communications LLC* improperly relies on *Shah v. Fandom* to find an IP address may confer standing. 2024 WL 5102709, *4 (N.D. Cal. Dec. 12, 2024); *see supra* n.5. And as explained previously, Plaintiffs' other cases involved more sensitive data than here, including "name, date of birth, [and] address." *E.g.*, *Camplisson*, 2025 WL 3228949, *1.

[14] Several of Plaintiffs' cases rely improperly on *Meta Pixel*'s ambiguity finding or otherwise ignore the above text. *E.g.*, *CoStar*, 2025 WL 3190656, *5. Likewise, *Saleh v. Nike*, a wiretapping case, held website activity like clicks and keystrokes amounted to

Plaintiffs also have no rebuttal to Defendants' argument that this interpretation is supported by the pen register provision's interaction with the wiretapping provision, § 631. Mot. at 13:14-21. Indeed, the provisions reflect distinct theories of liability—one where a device collects contents (a wiretap), and another where it does not (a pen register). *Id.* As Defendants explained, reading § 638.51 as capturing contents would render § 631 superfluous. The Court should not adopt such a construction. *Id.*

Lastly, Plaintiffs fail to acknowledge the tension between claiming the contents of their communications were not collected, and claiming they have Article III and statutory standing, as Defendants argued. *Id.* at 14:1-19. Indeed, if the Court accepts Plaintiffs' claim that contents of their communications were not collected, that would not support their standing positions. For standing, Plaintiffs must show disclosure of more than "record information." *See Zynga*, 750 F.3d at 1108. If the Court instead finds Plaintiffs pled that contents of their communications were collected, they have pled "too much" to state a § 638.51 claim, as Defendants previously noted. *Casillas*, 2025 WL 3529009, *2.

**2. CIPA § 638.51 Does Not Apply to "Downstream" Misuse**

Plaintiffs' cursory paragraph fails to establish CIPA § 638.51 applies to downstream conduct, including because it fails to grapple with the statutory text to which Defendants point. Opp. at 22:21-23:10. As Defendants explained, § 637.2 only authorizes action against "the person who committed the violation[,]" but the alleged injury is not based on Defendants' conduct, but rather that of downstream third parties who create profiles on individuals. Compl. ¶¶ 21, 22. Plaintiffs also do not directly engage with Defendants' point that another CIPA provision, § 631, expressly provides for derivative liability. Mot. at 15:23-26. The Court did not consider these arguments that downstream conduct is not covered by the pen register provision in *Magnite*, because the data broker defendant did not make them there. 2025 WL 3687546, *13.

Plaintiffs' attempts to distinguish Defendants' cases fail. They try to avoid *Aviles v. Liveramp, Inc.*, suggesting it was decided before other federal decisions and did not

---

contents, supporting Defendants' position. 562 F. Supp. 3d 503, 517-18 (C.D. Cal. 2021).

analyze the text, but *Aviles* analyzed the statutory definitions and concluded "downstream use of data is not a part of the[se] definitions." 2025 WL 487196, *3 (Cal. Super. Ct. Jan. 28, 2025); Opp. at 23 n.15. Plaintiffs' suggestion that *Van Buren v. U.S.*, 593 U.S. 374 (2021) and *Hannant v. Culbertson*, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) are not CIPA cases similarly misses the point, which is that—just like here—those cases involved a proposed interpretation that would read additional language into a statute to prohibit downstream misuse. Plaintiffs have thus failed to establish § 638.51 applies here.

**3. The Alleged Conduct Does Not Map Onto the Statutory Definition**

While Plaintiffs argue generally that § 638.51 applies, they do not meaningfully engage with Defendants' arguments that the claims do not map onto the statutory definition. Opp. at 18:9-20:13. Section 638.50(b) states pen registers entail a "process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument"—*i.e.*, information about outgoing communications from a device. In other words, the text contemplates a device allowing Defendants to learn who Plaintiffs contacted. Mot. at 16:11-19 (citing, *e.g.*, Ex. G, *Camacho v. DG Premium Brands LLC*, No. 24STCV21672, at 3-4 (Cal. Super. Ct. Apr. 17, 2025)). The Court in *Magnite* did not consider this textual argument through the lens of a website operator, because there, the defendant data broker allegedly collected information about webpages users visited across the internet, unlike here. Mot. at 17:26-18:10 (discussing 2025 WL 3687546, *11).

Plaintiffs do not engage with this argument, relying on cases that ignored the technologies allegedly collected information only about the plaintiffs' devices—not who they were communicating with—contradicting the plain text and legislative intent. Opp. at 19:6-20:9, n.10 (citing, *e.g.*, *Hassid*, 2026 WL 160535, *6); Bill Analysis, Assemb. B. 929, Reg. Sess., at S, T–U (Cal. July 8, 2015), https://tinyurl.com/39jcb5np (pen registers surveil outgoing communications of one individual, "Person A," to another, "Person B."). Because Plaintiffs do not consider these aspects of the text, they fail to respond to Defendants' other arguments. They do not dispute it would be improper to consider the claims from the perspective of all visits to NCAA.com, with the website as "person A[,]"

because it would make Defendants the "subject" of the pen register, not Plaintiffs. Mot. at 16:20-17:6. Nor do Plaintiffs address that the allegedly collected information does not allow Defendants to identify *who* visits the website. *Id.* at 17:17-25.

Lastly, if Plaintiffs' interpretation of § 638.51 were correct, it would render the statutory definitions of pen registers and trap and trace devices redundant. Section 638.50 separately defines trap and trace devices, although Plaintiffs do not plead use of a trap and trace device. Similar to a pen register, a trap and trace device collects "dialing, routing, addressing, or signaling" information about incoming communications, *i.e.*, who is contacting the subject. CIPA § 638.50(c). If information identifying the subject's device is covered, it would render the pen register and trap and trace device definitions superfluous, as pleading the use of one would automatically plead the other. *See* Ex. G, *Camacho*, at 3 ("[T]he statute prohibits . . . using a device that . . . identif[ies] who the subject is communicating with and who is communicating with the subject.").[15]

Plaintiffs thus fail to plausibly allege conduct falling within the statute's ambit.

**4. Plaintiffs' Reading Contradicts Legislative Intent of the CCPA**

Plaintiffs misstate Defendants' argument, which is that the legislature intended to regulate internet tracking via the CCPA, and did not require express consent to collect information, impose criminal penalties, or require a court order. Mot. at 18:16-19:5; *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, *5 (Cal. Super. Ct. Dec. 10, 2025). Holding Defendants liable, however, would require obtaining consent before collection, even though the CCPA does not require this. *Ink Am.*, 2025 WL 4034985, *4.[16] And while Plaintiffs take issue with a California state court's observation that applying § 638.51 to these circumstances would "disrupt a large swath of internet

[15] Plaintiffs' cases finding that transmitting information about plaintiffs' devices suffice do not consider this aspect of the plain text. *E.g.*, *Nelson v. Reddit, Inc.*, 2026 WL 445627, *6 (S.D. Cal. Feb. 17, 2026); *Harris*, 2026 WL 247875, *2-3.

[16] Plaintiffs' cases do not establish otherwise. The CCPA specifically regulates internet tracking, unlike CIPA, rendering *U.S. v. Hawkins* inapposite. 228 F.2d 517, 518 (9th Cir. 1955). *Mirmalek* failed to evaluate the tension between the CCPA and CIPA stemming from the plaintiff's proposed interpretation. 2024 WL 5102709, *5, and *OpenX* did not analyze the CCPA at all. 2026 WL 206855, *9.

commerce" (Opp. at 24:15-23), the number of cases cited by the parties shows how prevalent this type of litigation is, and the potential impacts to website operators. *See id.* at iii-vi (referencing nearly fifty CIPA § 638.51 cases).

### C. The Electronic Communications Service Provider Exception Applies

Plaintiffs' argument that § 638.51(b) does not apply fails because Plaintiffs do not engage with the breadth of this exception. Opp. at 24:24-25:16. Indeed, § 638.51(b) broadly provides that a provider of "electronic or wire communication service may use a pen register" to "operate, maintain, and test a wire or electronic communication service." Plaintiffs ignore Defendants' cases recognizing the wide scope of this definition, asserting these cases only involved IP addresses. Opp. at 25:7-16; *Casillas v. Transitions Optical, Inc.,* 2024 WL 4873370, *4 n.2 (Cal. Super. Ct. Sep. 9, 2024); *Casillas v. BOP LLC*, 2025 WL 2161288, *2 (Cal. Super. Ct. June 18, 2025). But like IP addresses, the other information here is disclosed as part of a website's normal operation: device and browser information are necessary to render a webpage, and information about user behavior is necessary to navigate a webpage. Compl. ¶¶ 20, 56, 97; *see United States v. Auernheimer*, 748 F.3d 525, 530 (3d Cir. 2014) ("A user agent tells a website what kind of browser and operating system a user is running, so servers that someone is attempting to access can format their responses appropriately."). For these reasons, § 638.51(b) bars liability here.

## III. PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED

Plaintiffs' request for leave to amend should be denied because they could not amend to allege an injury in fact, and "failed to allege any harm that could remotely approach" those required for Article III standing. *Schmier v. U.S. Court of Appeals*, 279 F.3d 817, 824 (9th Cir. 2002). Plaintiffs also could not amend to plausibly allege the technologies are pen registers, rendering amendment futile for this reason too. *See id.*

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' moving brief, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

The undersigned counsel of record for Defendants certifies that this brief complies with the page limit set forth in Section 6(c) of this Court's Standing Order.

Dated: March 13, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: */s/ David R. Singh*
DAVID R. SINGH

DAVID R. SINGH
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DAVID L. YOHAI (*pro hac vice*)
david.yohai@weil.com
BLAKE J. STEINBERG (*pro hac vice*)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendants NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.