DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendants NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.

(*Additional Counsel Listed on Signature Page*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MAREN ANDERSON and VALERIA GONZALEZ,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.,<br><br>Defendants. | Case No. 2:25-cv-11576-MWC-MBK<br><br>**ESI STIPULATION AND [PROPOSED] ORDER**<br><br>Courtroom 6A, 6th Floor<br>Honorable Michelle Williams Court<br>Magistrate Judge Michael B. Kaufman |

The parties in the above-captioned matter (the "**Parties**") have agreed to the following terms regarding discovery of electronically stored information ("**ESI**"). The following terms and conditions (this "**ESI Order**") shall govern the collection and production of ESI requested or produced in this matter (the "**Litigation**").

## I. PURPOSE

This ESI Order will govern discovery of electronically stored information and hard copy documents in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Central District of California and any other applicable orders and rules.

## II. PRESERVATION

The Parties have discussed their preservation obligations and needs and agree that they will undertake reasonable and proportionate efforts to preserve documents relevant to the allegations of Plaintiffs' Complaint (or to any subsequent operative complaint) or any defenses to the claims therein.

To reduce the costs and burdens of preservation, absent a showing of good cause by the requesting party, the Parties shall have no obligation to preserve (regardless of timeframe and notwithstanding anything to the contrary above):

a. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
b. Digital voicemail;
c. Automatically saved interim versions of documents;
d. Deleted, fragmented, or unallocated data only accessible by forensics;
e. Structural files not material to individual file contents (e.g. .CSS, .XSL, .XML, .DTD, etc.);
f. Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

g. Dynamic fields of database or log files that are not retained in the usual course of business; and

h. Interim metadata that is frequently updated and overwritten automatically prior to collection. For the avoidance of doubt, this provision does not relieve either party of (i) any obligation to extract via reasonable efforts the metadata that is available and reasonably accessible with a document at the time of collection for this Litigation; or (ii) producing the metadata fields described in Appendices 1 and 2.

## III. SEARCH

Search Methodology: The parties agree to meet and confer over the use of search tools and methodologies, including the use of search terms and technology assisted review ("TAR"), before any particular tool or methodology is applied to locate documents responsive to a party's production requests.

Search terms:

a. If search terms are used by the producing party to identify responsive documents and information, the producing party will provide a list of proposed search terms and a hit report for the proposed search terms to the requesting party.

b. Within 14 business days after receiving the producing party's proposed search terms and hit report, the requesting party shall identify in writing any proposed revisions and additions to the search terms.

c. Within 14 business days of receipt of the requesting party's proposed additions and revisions, the producing party will assess the additional and revised search terms, including by running hit reports or performing any other analyses the producing party believes would assist the parties in evaluating the effectiveness of the proposed search terms. The producing party must provide hit reports for the proposed additional and revised search

terms.

d. If the parties are unable to resolve disputes over search terms through the meet-and-confer process, the parties may submit the dispute to the Court.

e. If, up to 120 days before the close of fact discovery, the requesting party reasonably believes that additional search terms should be used beyond those agreed to as part of the first phase discussed above, the requesting party shall provide a list of such proposed search terms and an explanation as to why it believes each such additional term is reasonably necessary and should be used, and why it could not have requested the additional term during the first phase. No later than 14 business days after the requesting party provides an additional set of proposed search terms and articulates a reasonable need for the additional search terms, the producing party will assess the additional search terms, including by running hit reports or performing any other analyses the producing party believes would assist the parties in evaluating the effectiveness of the proposed search terms. The producing party must provide hit reports for the proposed additional or revised search terms. Thereafter, the parties will meet-and-confer in good faith as necessary to reach an agreement as to whether any of the additional proposed search terms should be used, provided this process is completed no later than 90 days before the close of fact discovery.

f. Agreement on a search methodology does not relieve a party of its obligation under the Federal Rules of Civil Procedure or any other relevant rule or statute to conduct a reasonable search and produce relevant and responsive documents of which a party is aware, regardless of whether they contain search terms, or are located by some other search methodology agreed to by the parties or ordered by the Court. To the extent a party is aware of non-duplicative documents in its possession, custody, and control that are

relevant, responsive, non-privileged, and reasonably accessible, such documents will be produced regardless of whether they contain search terms.

Custodians and Non-Custodial Sources:

a. Within 14 days from entry of this Order, the producing party shall provide to the requesting party a list of potential document custodians the producing party believes are likely to have information responsive to one or more document requests (including names and job title(s)), as well as a general description of non-custodial sources the producing party plans to search in response to the requesting party's document requests.

b. No later than 14 days after receiving the producing party's initial list of document custodians, the requesting party may propose additional or alternative document custodians it reasonably believes possess information that would be responsive to one or more document requests. The parties will meet-and-confer in good faith to resolve any disputes over the identification or number of document custodians.

c. Nothing in this paragraph prevents the requesting party from subsequently proposing additional or alternative document custodians as discovery progresses.

Validation: Each producing party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make appropriate adjustments or corrections to its process. If, after reviewing a producing party's production, a receiving party reasonably requests additional information regarding the validation method(s) used by the producing party, the Parties will meet and confer regarding those reasonable requests. If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith.

Technology Assisted Review ("TAR"): To the extent a party chooses to use a technology or methodology for culling documents in addition to or other than search terms (including, for instance, predictive coding), that party shall disclose its intent to use that technology and the name of the tool in advance of use. The parties shall meet and confer in good faith regarding a mutually agreeable protocol for the use of such technology or alternatives.

## IV. PRODUCTION FORMATS

The Parties agree to produce documents in the formats set forth in Appendix 1 and 2 hereto. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. Recognizing that each producing party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI. No Party shall unreasonably object to any such variance. The Parties agree not to degrade the searchability of documents as part of the document production process.

## V. DOCUMENTS PROTECTED FROM DISCOVERY

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. The Parties shall follow the requirements of Federal Rule of Civil Procedure 26(b)(5)(B) in the event of such production, as well as the applicable terms of the Parties' Proposed Stipulated Protective Order.

To the extent that a Party reasonably determines that one or more responsive

documents are not discoverable on the basis of a recognized protection or privilege (collectively, the "**Privileges**" and each a "**Privilege**"), the party shall produce a log treating each document withheld for privilege from that production separately that sets forth: (a) the nature of the privilege(s) or other protection claimed; (b) all persons, by name, and, where applicable, identification if a person is an attorney making or receiving the privileged or protected communication or document (with respect to e-mail threads, the author/addresser, addressee(s) and recipients of only the top e-mail in the chain will be set forth in the author/addressee, addressee(s) and recipient fields of the log); (c) the date of the communication or document; and (d) a description of the general subject matter contained in the communication or document and the type of communication or document (e.g., letter, memorandum, handwritten notes) sufficient to allow the receiving party to assess the claimed Privilege. Communications that post-date the filing of the Complaint in the above-captioned action need not be placed on any privilege log.

The producing party shall provide a privilege log to the requesting party identifying all documents withheld or redacted on the basis of privilege or work product protection within 45 days of the rolling production as to which the privilege log relates.

Documents redacted for privilege need not appear on the privilege log provided that the producing party provides a metadata field in the .dat file for its production(s) indicating whether a document is redacted, the redacted document states the basis for the redaction in the text of the redaction box (e.g., "Attorney-Client Privilege," "Work Product," etc.), and the producing party agrees to provide additional information in response to reasonable, particularized requests where the basis for a privilege redaction is unclear on the face of the redacted document.

Any Party may reasonably dispute a claim of privilege. Prior to seeking Court intervention, the Party disputing, questioning, or otherwise objecting to a claim of privilege or work product shall provide in writing the identification of the documents or category of documents for which it questions the claim of privilege or work product and

the reasons for disputing, questioning, or otherwise objecting to the privilege or work product designation. Within fourteen (14) days, the Party that designated the documents as privileged or work product protected will provide a written response explaining the basis for its claim of privilege or work product protection, or if applicable, de-designating documents as privileged or work product protected. Thereafter, if the Parties continue to disagree, they will meet and confer in good faith as to the claims of privilege or work product. If agreement has not been reached within ten (10) days after the commencement of the meet and confer process, any party may submit the dispute to the Court. Nothing in this provision shall prevent the Parties from agreeing to reasonable extensions of the timeframe set forth in this paragraph.

## VI. HARD COPY DOCUMENT STORAGE

During the pendency of this Litigation, the Parties shall make reasonable efforts to preserve the originals of all hard copy documents as to which there may be issues of legibility of all or any part of the production copy. Each Party reserves the right to request to inspect such original documents of the opposing Party or Parties, which request shall not be unreasonably denied. If such request to inspect is denied, the Party may seek relief from the Court.

## VII. MODIFICATION

This Order may be modified by a stipulation of the Parties or by the Court for good cause shown.

## VIII. MISCELLANEOUS

Nothing in this Order shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

Nothing in this Order shall affect any other obligations of the Parties to preserve

documents or information for other purposes, such as pursuant to court order, administrative order, or statute or in response to other pending or anticipated litigation. In addition, nothing in this Order shall eliminate or alter any Party's obligation to retain native format copies, including associated metadata, of all documents produced in this litigation, together with the original hard copy documents for all paper discovery produced in this Litigation.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD**.

Dated: September 1, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

*/s/ David R. Singh*

DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DAVID L. YOHAI (admitted *pro hac vice*)
david.yohai@weil.com
SARAH RYU (admitted *pro hac vice*)
sarah.ryu@weil.com
BLAKE J. STEINBERG (admitted *pro hac vice*)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NE 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendants NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and TURNER SPORTS INTERACTIVE, INC.

Dated: September 1, 2026

Respectfully Submitted,

KAHN SWICK & FOTI, LLC
/s/ *Kim E. Miller*
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
1901 Avenue of the Stars, 2nd Floor
Los Angeles, California 90067
Telephone: (504) 455-1400

Melissa H. Harris (admitted *pro hac vice*)
melissa.harris@ksfcounsel.com
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400

*Counsel for Plaintiffs and the Putative Class*

**ATTESTATION UNDER LOCAL RULE 5-4.3.4**

I, David R. Singh, attest that the above-listed signatories on whose behalf this document is being filed have concurred in the filing's content and have authorized the filing.

Dated: September 1, 2026

/s/ *David R. Singh*

David R. Singh

**IT IS SO ORDERED.**

DATED: _____________, 2026 _________________________________

**MICHAEL B. KAUFMAN**
UNITED STATES MAGISTRATE JUDGE

# APPENDIX 1

## PRODUCTION DELIVERY REQUIREMENTS

## I. GENERAL PRODUCTION PROVISIONS

The Parties have agreed that ESI should be produced as TIFF images and in native format where applicable with accompanying data and image load files.

### A. TIFF Image Files.

The Parties agree that all documents, with the exception of documents produced in native format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

### B. Text Files.

Each document produced under this Order shall be accompanied by a single, multipage .txt (text) file with related OCR and/or extracted text for that item. Each text file shall be named to use the Bates number of the first page of the production item. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned documents and redacted files as applicable. The .DAT load file shall include a link to the corresponding text file.

### C. OCR Text for Redacted Documents.

The parties will provide searchable OCR text for any redacted files, except for portions that are redacted.

### D. Bates Numbering.

Each TIFF image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits across the entire production, in addition to any alphabetic

characters preceding these digits; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document. The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a producing party knowingly skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production.

The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. If the receiving party believes that a Bates number obscures the content of a document, then the receiving party may request that the document be produced with the Bates number in a different position.

**E. <u>Re-Production of Prior or Other Litigation Documents.</u>**

Where a requesting party seeks re-production of a set of documents produced in a prior litigation or any other proceeding, or where a prior production of documents or ESI by a party in a prior litigation or any other proceeding is the only reasonably accessible source of those documents or ESI to be produced by a party in this Litigation, the producing party may re-produce such documents in the manner in which they were produced in the prior case, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the producing party as part of the productions set. For any such re-production in accordance with this Paragraph, the producing party is not obligated to re-format the prior production in accordance with the production specifications in this ESI stipulation, but must provide Bates numbering and confidentiality designations specific to this Litigation.

**F. <u>Parent-Child Relationships.</u>**

Parent-child relationships for all embedded ESI documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all

items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2. For example, if a Party is producing an email with attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email. For purposes of this paragraph, email wrappers generated automatically as part of the email journaling process will not be treated as parent emails and need not be produced.

**G. Color Documents.**

All color documents shall be produced in color. If producing certain documents in color would be unduly burdensome, the Parties agree to meet and confer to determine whether those documents may be produced in black & white.

**H. Confidentiality Designations.**

If a particular document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such document, in the lower left-hand corner of the document, or as close thereto as possible while preserving the underlying image. If the receiving party believes that a confidentiality designation obscures the content of a document, then the receiving party may request that the document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the document. For each document that is marked confidential, a Confidentiality field will be populated with the word "Confidential" or other confidentiality designation in the .dat file. If there is any inconsistency between the designation in the Confidentiality field and the designation stamped on the face of the document, then the higher, more protective confidentiality designation shall control until inconsistencies are addressed by the parties.

Also, any documents marked Confidential or Highly Confidential – Attorneys' Eyes Only must be handled in accordance with the Proposed Stipulated Protective Order in this case.

**I. <u>Hyperlinks.</u>**

The parties agree to produce hyperlinked files (as opposed to web content) as part of the same document family as the document containing the hyperlink, to the extent such hyperlinked files exist and can be reasonably located within the possession, custody or control of the party and collected without undue burden.

**J. <u>Embedded Objects.</u>**

Embedded files to responsive documents that are smaller than 5KB need not be produced as separate documents. Examples of Embedded files include, but are not limited to, logo graphics in email signature lines (usually *.PNG or another image file format) and images, tables, or graphics in presentation software like Microsoft PowerPoint.

**K. <u>Text and Mobile Device Chat Messages.</u>**

For purposes of this Order, "Text Messages" means real-time communications sent via mobile devices or mobile device chat apps as text messages, chat client, or SMS, including but not limited to WhatsApp, Messenger, or iMessage. Text Messages shall be processed and reviewed in 24-hour segment RSMF, or equivalent, format, maintaining familial relationships and embedded data. This data shall be produced in image format pursuant to the above specifications.

## II. <u>PRODUCTION OF HARD COPY DOCUMENTS</u>

All hard copy documents that are scanned will be produced in electronic form. Where necessary and practicable, hard copy documents in color will be scanned in color to ensure full communication is communicated in the scanned copy. Scanned color documents will be provided in JPG file format.

**A. <u>Unitization of Paper Document.</u>**

To the extent practicable, hard copy documents shall be produced in the manner in which those documents were kept in the ordinary course of business.

**B. Identification.**

Where a document or group of documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

**C. Custodian Identification.**

The parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

**D. Metadata.**

The metadata associated with each hard copy document need only identify the Bates number, the custodian associated with that hard copy document, and any Confidential Designation or Redaction applied to that document.

## III. PRODUCTION OF "ESI"

**A.** De-NISTING and System Files: ESI productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTED files need not be produced. The parties may mutually agree upon any additional file types that can be excluded from review and production. A producing party shall identify any additional standard, readable, and reviewable file types which have been excluded from its document review population for any production made following the date of this Order, and will utilize reasonable best efforts to do the same with respect to any productions made prior to the date of this Order.

If a party excludes from review a standard, readable, and reviewable file type not within the industry standard, that party must disclose such an exclusion to the other parties.

**B.** Native Files: Certain file types, such as presentation application files (e.g., MS PowerPoint), spreadsheet application files (e.g., MS Excel, .csv), and multimedia

audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in native format. For files produced in native format, the producing party shall provide a single-page TIFF slip-sheet with the applicable Bates stamp indicating that a native item was produced. The corresponding load (.DAT) file shall include a NativeFileLink which provides the relative path linking information for each native file that is produced.

**C. <u>Metadata Fields and Processing,</u>**

ESI shall be processed in a manner that preserves the source native file and the metadata listed in Appendix 2, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Order. Time-zone metadata shall be processed and standardized to the Universal Time Code (UTC).

***<u>Hidden text.</u>*** ESI shall be processed, to the extent practicable, in a manner that displays hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments. Upon reasonable request, a producing party will produce files with any such information in native format.

***<u>Compressed Files and Encrypted Files.</u>*** Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted. The compressed files (i.e., .CAB, .GZ, .TAR .Z, .ZIP) may be removed, and a family relationship between the files contained therein need not be maintained.

***<u>Metadata and Coded Fields.</u>*** ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2. This Order does not create any obligation to create or manually code fields that are not automatically rendered or generated by the processing of the ESI, or that do not exist as part of the original metadata of the document;

provided, however, that the producing party must populate, where reasonably available, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) Redaction status, and (i) Confidentiality designation. Where reasonably available, these fields should be populated for all produced ESI, as well as paper documents converted to electronic form.

## IV. DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA

The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application. To the extent there are any dynamic databases (e.g., SQL and SAP) for which one party maintains that document extraction would be substantially burdensome and/or the extracted format is not usable, the parties will meet and confer to discuss to determine the most reasonable form of production based on the specific circumstances. If one or more other formats of ESI come to light that due to their complex nature may not be appropriate for production as TIFF images or as native files, the parties will meet and confer in good faith to discuss a mutually agreeable production format or formats. Prior to any such meet and confer, Defendants will provide sufficient information to enable the Plaintiffs to evaluate the best method and format of production, which may include such information as the database or data store name, business purpose, database or data source owner, database schema, tables, column/field definitions, standard reports, export capabilities, and administrator, programmer and user manuals. If the parties cannot reach agreement, they may submit the dispute to the Court.

## V. PROPRIETARY OR SPECIAL SOFTWARE

To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary or special software, the parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format.

## VI. RESPONSIVENESS, PRIVILEGE & REDACTIONS.

To the extent that a party reasonably determines that e-mail or related attachments

that are responsive to a document request are not discoverable because they are subject to a Privilege, the party shall produce a log listing the e-mails or attachments.

**A. Redactions:**

The parties agree that where ESI items need to be redacted, they may be produced solely in TIFF format with each redaction clearly indicated or where TIFF format is not practicable, in redacted native format, as noted below. Any unaffected data fields shall be provided. The redaction of any material for privilege or other reason shall be governed by applicable rules and case law regarding privilege and the provisions contained in the Proposed Stipulated Protective Order in this action. The Producing Party shall produce the redacted file in the reasonably useable form or shall produce the redacted copy in native format. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (e.g., the file is a video), the producing party may produce a copy of the native file with the relevant portions replaced with "PRIVILEGED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction.

For each document that is redacted, a Redaction field will be populated with the word "REDACTED" in the .DAT file.

**B. Printing Specifications for Excel and PowerPoint files:**

Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a producing party may natively redact other files that cannot be properly imaged for redaction.

If the items redacted and partially withheld are PowerPoint-type presentation decks and the native items are also withheld, the entire ESI item must be produced in TIFF format, including unprivileged pages, hidden fields and other information that does not

print when opened as last saved by the custodian or end-user. For PowerPoint files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

| Excel Print to TIFF Options |
| --- |
| • Unhide columns and rows<br>• Unhide worksheets<br>• Autofit columns and rows, settings to be over by columns first and, then down by rows<br>• Wrap text<br>• Print gridlines<br>• Do not apply Autofilter<br>• Display headings<br>• Display comments<br>• Header and Footer filename field handling: Show field code |
| **PowerPoint Print to TIFF Options** |
| • Print notes pages<br>• Print hidden slides<br>• Print comments |

The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible. If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content. If the content is a voice or audio recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unredacted portion of the content. For redacted items which were originally ESI, all metadata fields will be provided

and will include all non-redacted data. A document's status as redacted does not relieve the producing party from providing all of the unredacted metadata required herein.

**C. De-duplication and Document Families:**

A producing party shall not be required to search for or produce more than one identical copy of responsive documents absent a showing of good cause that the production of such additional identical copies is necessary. The producing party need only produce a single copy of a particular ESI item, and may de-duplicate ESI vertically by custodian, or horizontally (globally) across the population of records. Duplicates shall be identified by using industry standard MD5 or SHA-1 hash values, or other generated hash values upon notice given, only to create and compare hash values for exact matches. The resulting hash value for each item shall be reflected in the .DAT load file in the HashValue field specified in Appendix 2. If a producing party elects to de-duplicate globally, the producing party shall identify custodians who were in possession of a de-duplicated document in the AllCustodian metadata field specified in Appendix 2. This means that the field "AllCustodian" will be populated showing all custodians who had a copy of the same document which is not being produced because of deduplication.

Attachments to emails or other documents shall not be disassociated from the parent email or document, even if they are exact duplicates of another document in the production.

**D. Load Files:**

The data load file should be in standard Concordance format (.DAT). The .DAT file shall contain a relative path to the corresponding native file.

***Concordance Data Load Files:*** The data load file should use standard Concordance delimiters:

- Column - ¶ (ASCII 182);
- Quote - þ (ASCII 254);

- Newline - ® (ASCII 174).
- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
- All date fields should be produced in mm/dd/yyyy format, if possible. All produced attachments should sequentially follow the parent document/email.

***Sample Concordance .DAT Load File:***

þBegBatesþ¶þBegattatchþ¶þCustodianþ¶þNativePathþ¶þExtractedTextþþABC000001þ¶þABC000001þ¶þSampleþ¶þ\VOL001\NATIVES\001\ABC000001.xlsþ¶þTEXT\001\ABC000001.ttþþABC000002þ¶þABC000001þ¶þSampleþ¶þNATIVES\001\ABC000002.gifþ¶þTEXT\001\ABC000002.txtþ

***Image Load File:*** The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

- Every image in the delivery volume should be cross-referenced in the image load file.
- The imageID key should be named the same as the Bates number of the page.
- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

***Sample Concordance/Opticon Image (.OPT) Load File:***

MSC000001,MSC001, \VOL001\IMAGES\001\MSC000001.TIF,Y,,,2

MSC000002,MSC001, \VOL001\IMAGES\001\MSC000002.TIF,,,,
MSC000004,MSC001, \VOL001\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001, \VOL001\IMAGES\001\MSC000005.TIF,,,,

***<u>OCR/Extracted Text Files:</u>*** OCR or Extracted Text files shall be provided in a separate directory containing document level text files. The .DAT file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the .DAT file:

PROD001\TEXT\001\ABC00015.txt

## APPENDIX 2: ESI METADATA AND CODING FIELDS

General ESI production requests under Federal Rules of Civil Procedure 34 and 35 shall not include metadata absent a showing of good cause, except as listed in the chart below, to the extent such metadata fields exist associated with the original electronic documents and are automatically generated as part of the electronic data discovery process.

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br>**The EndBates field should be populated for single-page items. |
| BegAttach | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| Custodian | Name of person from whose files the item is produced |
| AllCustodian | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de- duplicated |
| FileSize | Size (in kilobites) of the source native file |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |

| | |
|---|---|
| HiddenContent | Denotes presence of tracked changes / hidden content / embedded objects in item(s) (Y/N) |
| NativeFileLink | Relative path for documents provided in native format only.<br>**The linked file must be named per the BegBates value. |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| Parent Date/Sort Date | The date associated with a family's parent record, which is assigned as follows:<br>Emails populated with 1st occurrence: **Date Sent** or **Date Received** or **Date Last Modified**. Email attachments populated from the date above.<br>Outlook Appointments populated with 1st occurrence of **Start Date** or **Date Last Modified**.<br>Loose Edocs populated with 1st occurrence of **Date Last Modified** or **Date Created**. |
| PgCount | Number of pages in the document |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent |

| | |
|---|---|
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Subject | The subject line of the email |
| MsgID | The unique Message-ID field for the email |
| Number of Attachments | Number of attached items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created |
| ModifiedDate | Last-modified date and time (mm/dd/yyyy |

| | |
|---|---|
| | hh:mm:ss with time zone) for the document |
| FileName | The filename of the source native file for an ESI item |
| Title | Title provided by user within the document |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY" applicable. Otherwise, blank. |